[Civ. No. 15673.   Second Dist., Div. Three.   Aug. 18, 1947.]

DONALD MacISAAC et al., Appellants, v. EMILE A. POZZO et al., Respondents.

A. L. Abrahams and H. B. Cornell for Appellants.

H. G. Redwine and Gwyn S. Redwine for Respondents.

SHINN, Acting P. J.—The parties hereto are construction contractors. Plaintiffs are copartners doing business as Mac-Isaac and Menke, and defendants are copartners doing business as Pozzo and Pozzo. In August, 1942, the parties entered into a joint venture agreement for the submission of a joint proposal to the United States for the construction of civilian housing at Ogden, Utah, known as the Hill Field project or job, and for the construction of the work if their proposal should be accepted. They secured the contract for general construction to an amount of some $1,500,000, set up an organization in Utah under the name of MacIsaac, Menke and Pozzo (hereinafter referred to as the Utah firm), and proceeded with the work. Their agreement related solely to this specific contract and they were to share equally the gains and losses thereunder.

The agreement provided (1) that neither party should incur liabilities for the joint association without the consent of the other, (2) the agreement was to become null and void if either party withdrew from it before a bid was submitted or if the contract was not secured, and (3) no agreement on behalf of the firm would be valid unless signed by MacIsaac or Menke for plaintiff and Emile A. Pozzo or Louis J. Pozzo for defendant. It contained another provision reading as follows: ''The following additional jobs are added to above agreement: Only such contracts as are named above are to come under the terms of this joint venture agreement.''

Under date of September 30, 1942 (signed October 5, 1942), plaintiff and defendant entered into an additional joint venture agreement for the purpose of bidding on a contract with the Utah Fuel Company for the management of construction of a residential subdivision at Sunnyvale, Utah, for a fee of approximately $65,000, of which plaintiff was to receive 85 per cent and defendant 15 per cent. A contract with Utah Fuel Company was signed October 5, 1942, and was duly performed, the fee was earned, was paid over and divided in part, in the proportions of 85 per cent to plaintiff and 15 per cent to defendant, and the balance was impounded in a bank because of the present dispute as to the proper division of the same and to await renegotiation. Plaintiff brought this action for declaratory relief, contending that the fee should be divided

in the proportions stipulated in the agreement. Defendant answered and filed a cross-complaint in which it was alleged that its consent to the 85-15 per cent division had been procured by fraud, and claimed 50 per cent of the fee. Findings and judgment were in favor of defendant upon its cross-complaint, awarding it the balance of 50 per cent of the net fee, and plaintiff appeals.

In the original cross-complaint it was alleged that employees and agents of the joint venturers did, for and on behalf of plaintiff and defendant as such joint venturers, negotiate for the contract with the Utah Fuel Company on a fee basis, and that as a result of the negotiations an understanding and agreement was reached for the performance of such work by the joint venturers; that plaintiff represented to defendant that the contract had been obtained by plaintiff for itself and not for or on behalf of the joint venturers and that by means of such false and fraudulent representations defendant was induced to and did enter into an agreement to accept 15 per cent of the fee earned in consideration for the use of the organization and facilities of the joint venturers in the work. There were further allegations of discovery of the fraud and notification of plaintiff that defendant would not be bound by the agreement. Defendant's answer contained substantially the same allegations. Judgment on the pleadings was rendered in favor of plaintiff, defendant appealed and the judgment was reversed. (*MacIsaac* v. *Pozzo,* 26 Cal.2d 809 [161 P.2d 449].) Defendant then amended its cross-complaint with additional allegations of the circumstances under which the contract was obtained and defendant was induced to enter into the disputed agreement.

The evidence disclosed that while the Hill Field work was under way Menke and plaintiff's employee, Smith, learned of the Sunnyvale job which the Utah Fuel Company wished to let on contract. Smith wrote to Thomas, a former employee of plaintiff and then employed by MacIsaac, Menke and Pozzo, in Utah, requesting him to look into the matter. Thomas contacted the architect of the job, believing at the time that he was acting for the joint venturers. Menke and Smith went to Utah and, with Thomas, conferred with the representatives of the Utah Fuel Company. In the negotiations which followed the work was solicited for the Utah firm. It was represented that the same organization would be used as was employed on the Hill Field job and in the same manner; the members of

the Utah administrative organization and the connection of the Pozzos with the firm were discussed. Utah Fuel Company obtained a Dun & Bradstreet report on the Utah firm, which at that time was engaged only on the Hill Field job. The tenor of these negotiations is well described by Smith, as follows: "Q. In other words you attempted to sell the Hill Field organization to them, didn't you? A. We sold everything that either MacIsaac, Menke or Pozzo had to offer." As a result of the negotiations it was orally agreed that the Utah firm should have a contract for supervision at a fee of approximately $65,000. Emile Pozzo in the meantime had gone to Utah in another connection. He, also, had learned of the Sunnyvale job and showed a trade paper clipping to Menke, the same as the one which Smith had sent to Thomas, and he suggested that it would be a good job for them to go after. Menke then replied that MacIsaac and Menke had been recommended for the job by the Kaiser interests before the original joint venture agreement was entered into and said, "we have got that job in the bag." Menke testified as follows: "He [Pozzo] said, 'well, maybe I will give you some competition' and I told him that would be fine, if he could sell the job for himself it would be his, and if he sold the job it would be ours, and he said, 'well, maybe I will do that,' and walked out." Menke also testified that he told Pozzo that it was satisfactory to Utah Fuel Company that plaintiff have the job. Although he testified that the representatives of Utah Fuel had so stated in the meeting this was denied by those representatives, and others, who testified that only the Utah firm (MacIsaac, Menke and Pozzo) name had been mentioned.

The court found that the contract was negotiated as stated above and that defendant had suffered damage in the amount for which judgment was given, namely, for the balance of one-half of the net profit on the job. In its attack upon the judgment plaintiff makes the following argument, (1) under the original agreement each party was at liberty to carry on its own contracting business, (2) neither party, nor any agent or employee, had authority to solicit or accept new business for the firm, (3) plaintiff was free to deal with Pozzo for the use of the firm's facilities upon the best obtainable terms, (4) Pozzo had no right to participate in the Sunnyvale contract by reason of the original joint venture, (5) defendant had no interest in the Sunnyvale contract until it acquired a 15 per cent interest under the agreement; it lost nothing, but actually

gained something it would not otherwise have had, and consequently has suffered no damage and is entitled to no relief. It is also claimed that the judgment rewrites the contract of the parties; that plaintiff entered into the Sunnyvale contract only upon the basis that it was to receive 85 per cent of the profits, but the judgment converts the agreement into one which plaintiff never made, namely, an agreement to do the work jointly with defendant for one-half the profits. For these reasons, it is contended that no fraud was proved but that even if the agreement between the parties should be annulled, no implied agreement would remain as a basis for a division of the profits and defendant could recover only on quantum meruit.

Defendant, on the other hand, asserts merely that a fiduciary relation existed, that the contract was negotiated by agents of the firm and for its benefit, that the agreement for division of profits was obtained through fraud and that defendant is therefore entitled to one-half the profits.

We understand the controlling facts to be the following: Menke was a fiduciary as to all matters pertaining to the original joint venture (*MacIsaac* v. *Pozzo, supra*); plaintiff solicited the Sunnyvale contract for the firm and the firm by reason of its reputation, organization and credit was offered an opportunity to take the contract; Menke, knowing these facts, misrepresented them to Pozzo and thus secured his consent to the 85-15 per cent division, and having obtained it, joined with defendant in the contract with Utah Fuel Company.

It is not at all clear from the findings and conclusions what legal principles were applied to these facts as a basis for the judgment. The gravamen of the action is alleged breach of duty and actual fraud upon the part of plaintiff. The fraud charged goes to the validity of the agreement for division of profits. Annulment of the agreement for fraud only opened the way to a determination of rights unaffected by the agreement. These rights were then not fixed by contract. The Sunnyvale contract, as between the parties hereto, was taken upon the terms stated in their agreement which called for an 85-15 per cent division of profits and not otherwise. It cannot be considered as importing an implied agreement for an equal division of profits.

The additional facts pleaded in the amended cross-complaint and developed at the trial defined the extent of the fiduciary relationship which the Supreme Court recognized on the former

appeal. The conditions under which the Sunnyvale contract was consummated are unusual in the extreme, and they require careful consideration in order to determine the exact basis of liability. Defendant's rights were such as grew out of the relationship of the parties and their conduct, and these will determine whether there was an actionable breach of duty.

The fraud which vitiated the joint venture agreement, which provided for division of profits, consisted of concealment of the fact that the contract had been negotiated for the firm and the actual representation that it was available to plaintiff separately, as well as to the firm. Plaintiff insists this was not actionable deception because there was no fiduciary relation and without it there was no duty to make a full disclosure. There was a fiduciary relationship and a duty to make full disclosure, as will be developed later. It is argued also that Emile Pozzo, for defendant, at first demanded an equal share in the contract, but waived this right, if it existed, when he finally agreed to a participation to the extent of only 15 per cent. Inasmuch as his consent was induced by the fraud of plaintiff, it was not voluntary and defendant has shown good grounds for relief from it. Further discussion of the provision of the judgment which holds the agreement to be invalid is unnecessary. The findings are sufficient to justify annulment of the agreement and are amply supported by the evidence.

The remaining question relates to the rights of the parties in the absence of specific agreement as to the proportions in which the profits were to be divided.

Plaintiff insists that it entered into the contract only after having secured defendant's consent to accept 15 per cent of the profits and that it might not have been willing to undertake the agreement and to have shared the profits equally with defendant. This, of course, is true, but plaintiff cannot justly contend that the judgment has the effect of rewriting the contract. It does not purport to do that, but only to establish the rights and duties of the parties as they existed before the contract for division of profits was made. One who has obtained an unfair advantage through a contract induced by his fraud cannot shield himself from making restitution by the assertion that if it had not been for the advantage thus gained he would not have made the contract.

We should, therefore, look to the relations of the parties, and their responsibilities, as of the time when they first learned of the Sunnyvale job, in order to determine whether plaintiff

was guilty of a breach of duty which justified the judgment. Notwithstanding that the joint venture agreement related only to the Hill Field job, the Utah firm had been brought into existence, and had acquired certain intangible assets consisting of business reputation, standing and credit. It was in a favorable position to have presented to it business opportunities in the contracting field. It was within the contemplation of the parties that such opportunities might be presented to the firm. Paragraph 16 of the agreement, which we have quoted, indicates that other jobs might be added to the contract by mutual consent. The Utah firm did subsequently bid upon some eight other jobs and obtained two small contracts. However, this could only have been done with the specific consent of plaintiff and defendant. Neither was authorized to represent the other in negotiating new contracts, nor was any agent so authorized. The negotiations that were carried on amounted only to the development of a business opportunity for the firm. The Sunnyvale job was essentially a business opportunity which was offered to the Utah firm within the field where the parties expected the firm to operate. The opportunity belonged to the firm and when the negotiations had been carried to the point where it was possible to take the contract for the firm, it was the duty of each of the parties to conclude those negotiations for the benefit of the firm and without seeking any advantage for itself to the detriment of the other. The duty existed from the time the negotiations began, and the rights of the parties after the contract was executed related back to the commencement of the negotiations.

Upon the facts as established by the findings it is clear that the principle which governs and which justifies the judgment is that stated in *Guth* v. *Loft, Inc.*, 23 Del.Ch. 255 [5 A.2d 503, 511], as follows: ''On the other hand, it is equally true that, if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if, in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the

law will impress a trust in favor of the corporation upon the property, interests and profits so acquired.'' (*Beaudette* v. *Graham*, 267 Mass. 7 [165 N.E. 671] ; *Michigan Crown Fender Co. v. Welch*, 211 Mich. 148 [178 N.W. 684, 13 A.L.R. 896] ; *Bailey* v. *Jacobs*, 325 Pa. 187 [189 A. 320] ; *Nebraska Power Co.* v. *Koenig*, 93 Neb. 68 [139 N.W. 839] ; *Beatty* v. *Guggenheim Exploration Co.*, 225 N.Y. 380 [122 N.E. 378] ; cf., Rest., Agency, §§ 387, 403.)

The facts bring the case within the stated rule. ■ While it has been applied so generally in corporation cases as to have become known as the doctrine of corporate opportunity it is founded in the doctrine of loyalty in business which applies in all situations in which trust is reposed. (Cf. *Meinhard* v. *Salmon*, 249 N.Y. 458 [164 N.E. 545, 62 A.L.R. 1] ; Rest., Restitution, § 190.) The fiduciary is held to the utmost measure of loyalty and accordingly he may not use a trust opportunity for personal advantage. (Rest., Trusts, § 170.) As stated in *Hoyt* v. *Hampe*, 206 Iowa 206 [214 N.W. 718, 724, 220 N.W. 45], ''The policy of the law is to put fiduciaries beyond the reach of temptation by making it unprofitable for them to yield to it.''

■ The primary duty of the parties was to take no advantage of each other within their fiduciary relationship by means of the slightest concealment, misrepresentation or adverse pressure. Defendant was entitled to a complete disclosure as to the negotiations with Utah Fuel Company and an equal opportunity to take advantage of them. Plaintiff contrived to appropriate to itself the major share of the profits with the result that the firm, when it took the contract and assumed the responsibility stood committed to the unequal division. Defendant could not be deprived of its rights in this manner.

■ The judgment properly awarded defendant the amount by which plaintiff profited through its breach of duty. Whether it be regarded as damages presumed to have been suffered through deprivation of a business opportunity or as profits unjustly received by plaintiff is immaterial. ■ The finding that defendant sustained damage was proper. It implies the existence of facts which were material to a recovery for the deprivation of a business opportunity.

■ In fixing the amount of the recovery plaintiff was allowed $12,000 and defendant $1,000 for personal services of members of the two firms, as items of expense, before computa-

tion of profits. The October 5, 1942, agreement did not provide for such allowances. Plaintiff argues that if the agreement was not to be followed the profits should have been divided 12/13 to plaintiff and 1/13 to defendant, or upon a strictly quantum meruit basis. What we have already said answers this contention; the equal division was proper. Other points raised by plaintiff were urged and were disposed of adversely to its contentions upon the former appeal.

The judgment is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.