[Civ. No. 68660. Second Dist., Div. Five. Nov. 16, 1983.]

ROBERT L. LYNCH, Plaintiff and Appellant, v.
CHARLES E. COOK et al., Defendants and Respondents.

1074

COUNSEL

Reavis & McGrath, Richard H. Keatinge and John J. Crutchfield for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Loyd P. Derby and Edith R. Perez for Defendants and Respondents.

OPINION

**STEPHENS, J.**—Robert Lynch, plaintiff and appellant (hereinafter appellant or Lynch), appeals a judgment entered pursuant to Code of Civil Procedure section 631.8 in favor of defendants-respondents Charles Cook et al. (hereinafter respondents). This action was originally commenced by appellant who sought damages and rescission of an allegedly improper tender offer and subsequent sale of stock. At issue is whether the trial court committed reversible error by failing to rule on material issues; whether the court erred in granting respondents' motion for judgment where respondents, acting as fiduciary, bore the burden of establishing the inherent fairness and good faith of their actions; whether the court erred in holding that respondents' misrepresentations and omissions were not material; and whether the court erred in holding that reliance on the part of Lynch was required in each of appellant's causes of action.

We conclude that the trial court did not commit reversible error and affirm the judgment accordingly.

The pertinent facts and involved parties are as follows: Appellant Lynch was president and director of First Financial Corporation of the West (hereinafter First Financial)[1] until his dismissal in May of 1970. After his dis-

---

[1]First Financial is a California corporation with approximately 500 shareholders whose major asset is a shopping center.

missal as president, Lynch retained his position as a director with First Financial. Lynch was also a 37.7 percent shareholder in First Financial (65,241 shares).

Respondent Charles Cook was also a director of First Financial until May 1970. Since May of 1970, Cook has been the president and a director of First Financial.

Cook is a partner of Cook Bros., a 45.02 percent shareholder of First Financial (77,872 shares), and has acted as the executor of the estate of his late brother Howard.[2] Through his interest in Cook Bros. and the control of his brother's estate, Charles Cook was a majority and controlling shareholder of First Financial.

Respondent, Franklin Cook, is the son of the late Howard Cook and the nephew of respondent Charles Cook. Franklin has been an officer and director of various businesses in which Charles Cook had an ownership interest. Prior to the tender offer in 1974, Franklin held a 4.8 percent interest (8,426 shares) of the outstanding shares of First Financial.

Lastly, respondent, Alan Johnson, served as an assistant to Charles Cook since 1973 and had advised First Financial, Charles and Franklin Cook in various tax, financial and business matters.

In 1970, Charles and Howard Cook had effective control of First Financial.[3] At this time, appellant Lynch was general manager of one of First Financial's holdings, Stonewood Shopping Center, as well as president of First Financial itself. For this latter position, appellant received no compensation. On May 13, 1970, appellant was removed[4] as president of First Financial by a vote of Directors Charles and Howard Cook and Arthur Pearson. However, on April 26, 1971, shortly following the death of Howard Cook, appellant Lynch sought to take over the entire control of First Financial's shopping center. Lynch then called a purported organizational meeting of the board of directors and elected himself as president of First Financial. Two other Lynch appointees were named to the board and respon-

---

[2] Howard and Charles were the only partners in Cook Bros.

[3] Both had nominated three of First Financial's five directors.

[4] Respondents contend that Lynch was dismissed as president after he objected to a transaction which he had previously approved and after he threatened to institute litigation against Charles Cook for fraud. Apparently, Lynch attempted to reverse a transaction which involved an exchange of First Financial stock for P. L. Securities Co. stock, the then owner of the shopping center of which appellant was general manager. P. L. Securities Co.'s stock was then held by Community Bank, a bank in which Charles Cook had a significant ownership interest.

dent Charles Cook was removed as First Financial's president.[5] This takeover apparently was void; however, Lynch remained on the board until sometime in 1974.

In May of 1971, appellant sought to persuade Charles Cook to negotiate with him for the purchase by Cook of his First Financial interest or vice versa. The record is unclear as to what events took place for the next three years, but, on July 31, 1974, Franklin Cook offered to purchase all outstanding shares of First Financial tendered on or before September 27, 1974, at $20 per share.[6] The tender-offer materials disclosed (1) that the tender offer price of $20 was established without the benefit of recent published quotations for shares of First Financial; (2) that Charles Cook did not intend to tender shares of First Financial held by Cook Bros.; and (3) that Franklin Cook had received commitments to obtain the funds necessary to pay for shares tendered pursuant to the tender offer from Community Bank and Cook Bros. Equipment Co.

The tender offer was proposed at approximately the same time that appellant was obligated to repay a large loan to Zion's First National Bank (hereinafter Zion). It is disputed as to whether respondents were aware of the existence of this large debt that appellant owed. Prior to the tender offer, appellant had pledged his shares of First Financial to Zion as collateral for the loan to finance a business he had set up in Utah. The Zion bank agreed to extend the loan after it knew of the tender offer and even extended additional funds available.

On September 23, 1974, four days prior to the expiration of the tender offer, Zion mailed to the Bank of America, the agreed-upon tender-offer agent, the tender-offer letters of transmittal executed by appellant. Also sent were the certificates evidencing appellant's shares of stock of First Financial. By September 27, the expiration date of the tender offer, appellant had accepted the tender offer. Franklin Cook thereafter purchased Lynch's 37.7 percent interest for $20 per share.

On January 15, 1975, First Financial's board of directors authorized the purchase of all the shares purchased by Franklin Cook in response to the tender offer. Shortly thereafter, appellant was removed from the board of

---

[5]The locks on the doors were also changed as were the bank accounts. Lynch contends he had no knowledge of these facts until after the events occurred.

[6]At the time the $20 tender offer was proposed by Cook, Lynch testified that he believed his shares were worth between $30 and $40 per share. However, from April 1970 to December 1973, Lynch was purchasing (and did purchase over 16,000 shares of First Financial) shares at from $8.50 per share to $16 per share. Though Lynch purchased shares in November 1973 for $16 each, as of December 1973 he testified he believed their worth to be $35 each.

directors. The corporation then abolished its annual report to shareholders and deregistered with the Securities and Exchange Commission (hereinafter SEC).

On October 11, 1977, appellant filed a complaint for damages, rescission and constructive trust. Said relief was based upon several causes of action including fraud; negligent misrepresentation; fraud by a fiduciary; breach of the duty of a majority shareholder to a minority shareholder; conspiracy; violation of the California Corporations Code; and violation of the Federal Securities Act of 1933. On November 30, 1977, respondents demurred and appellant amended his original complaint by adding a cause of action for aiding and abetting.

The action came on regularly for trial on February 24, 1982, and on March 5, the trial court granted respondents' motion for judgment pursuant to Code of Civil Procedure section 631.8. The court held that appellant was not entitled to any relief requested in his first amended complaint. Specifically, the court found that the $20 price offered by Franklin Cook was determined by adding a premium of approximately 20 percent to the last known purchase price of $17 per share for First Financial stock; that no misrepresentation or concealment of a material fact had occurred as well as no reliance by appellant on any statement or omission in connection with the tender offer; that appellant did not tender because Franklin Cook was the offeror, but because he was compelled to do so by Zion; that Franklin Cook did not enter into any agreement before the offer or during the tender period as to what would happen should appellant tender his stock; and that no breach of fiduciary duty resulted. Judgment was entered on April 28, 1982, and appellant timely filed this appeal.

Appellant initially contends that the trial court committed reversible error by failing to rule on material issues,[7] including its failure to "mention, recognize or even meaningfully allude to the case of *Jones* v. *H. F. Ahmanson & Co.* [(1969) 1 Cal.3d 93 (81 Cal.Rptr. 592, 460 P.2d 464)[8] . . . [and] the burden of proof which is thereby imposed on Respondents. . . ." Appellant continues by alleging that the court failed to address his contention that a subjective standard of materiality should be applied.[9]

---

[7]Respondents fail to address this issue.

[8]*Jones* v. *H. F. Ahmanson & Co., supra,* 1 Cal.3d at page 108, in relevant part stands for the proposition that "[M]ajority shareholders . . . have a fiduciary responsibility to the minority . . . to use their ability to control the corporation in a fair, just and equitable manner."

[9]Specifically, appellant sought a statement of decision as to the following:
"2. Did Defendants prove that they acted toward Plaintiff in good faith and in an inherently fair manner? [*Jones* v. *Ahmanson*] Did Defendants 'show fairness and good faith in

 It is accepted that "When findings on material subsidiary issues of fact are requested or when the omission of such findings is brought to the trial court's attention prior to entry of judgment, the trial court is required to make such findings. If it does not do so, it cannot be inferred on appeal that the trial court found in favor of the prevailing party on the issues covered by the requested findings. (Code Civ. Proc., § 634 . . . .) A 'material' issue of fact is one which is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case." (*Kuffel* v. *Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 565 [138 Cal.Rptr. 575].) ██ It is also true that the court is merely required to set forth the *ultimate* facts and legal conclusions rather than evidentiary facts. (Code Civ. Proc., § 632; *Bulmash* v. *Davis* (1979) 24 Cal.3d 691, 701 [157 Cal.Rptr. 66, 597 P.2d 469]; *Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 274 [137 Cal.Rptr. 855].)

██ We conclude that the trial court did not commit reversible error for appellant's requested findings were surplus to the court's decision and related to mere evidentiary matters.

The court concluded that "As to Mr. Lynch there was no misrepresentation of a material fact, there was no concealment of a material fact, and there was no reliance by Mr. Lynch on any statement or omission in connection with the tender offer." The court went on to state that "While the fact that Franklin Cook was, in a sense, acting on behalf of Charles Cook in making the tender offer was not disclosed, Mr. Lynch did not rely on the omission of this disclosure in tendering his shares." Lastly, the court concluded with the finding that "Defendants did not breach any fiduciary duty they had towards plaintiff as controlling shareholders to act in the highest good faith and with inherent fairness," and that "the tender offer and the subsequent purchase by First Financial of the shares tendered in connection with the tender offer did not constitute a breach of fiduciary duty on the part of defendants, or any of them."

The court's specific finding that "[Respondents] did not breach any fiduciary duty they had towards [appellant] as controlling shareholders to

all respects'? [*Chung* v. *Johnston*] Did Defendants prove 'scrupulous fairness' to Plaintiff? [*Thrasher* v. *Thrasher.*]

"3. Did any of the Defendants gain a personal financial advantage to Plaintiff's financial detriment? [*Remillard*] Did both Defendants and Plaintiff receive fair and proportionate financial results from the Tender Offer and the sale to First Financial of Plaintiff's shares?

"4. Did Defendants have the burden of proving that they acted with inherent fairness and in good faith toward Plaintiff? . . .

"8. Does a subjective or objective materiality standard apply to the transaction at bar?
. . .

"16. Does a balancing of any benefit to First Financial derived from the Tender Offer outweigh any personal benefit to the Defendants and personal detriment to the Plaintiff under the principles of *Jones* v. *Ahmanson*? . . ."

act in the highest good faith and with inherent fairness" clearly addresses appellant's requested findings Nos. 2 and 4 and adequately explains the factual and legal basis for its decision.

Appellant's requested findings Nos. 3 and 16 (i.e., did defendants gain a personal financial advantage to plaintiff's financial detriment; did the parties receive a fair and proportionate financial result from the sale of the stock; and was there a proper balancing of the benefits and detriments of the parties by the sale which took place), again relate to the inherent fairness of the transaction. These questions were also adequately addressed by the findings noted above as well as the following:

The court found that "Zions rather than defendants induced plaintiff to accept the tender offer. In plaintiffs own words, he had no alternative but to accept the tender offer." Furthermore, the court noted that at the time appellant accepted the tender offer, he was aware *that upon receipt of payment for the shares owned by him, he would thereafter not be a shareholder* of First Financial. As a result, the court's stated decision allows us to conclude that appellant's requested findings have been addressed.

■ Finally, appellant's requested finding No. 8 (i.e., does a subjective or objective materiality standard apply to the transaction) is unnecessary to the court's decision. The court discussed at great length materiality and its "reasonable man test" in conjunction with Corporations Code section 25401 and [SEC] rule 10b-5 [17 C.F.R. § 240. 10b-5 (1983)]. It found that "in order to demonstrate materiality under section 25401,[10] plaintiff was required to demonstrate that a reasonable man *would*[11] attach importance to the fact omitted or the misrepresentation in determining his choice of action in the transaction in question." (Italics added.) The applicable findings noted earlier lend adequate credence to the court's ultimate findings whether either the subjective or objective test is applied.

Regarding the specific test of materiality to have been applied, appellant asserts that the trial court erred in applying an objective test of materiality. Such an argument is inconsistent with his own contention that "As a result of the trial court's failure to make a finding as to the applicable standard of materiality, . . . it is unclear which test the trial court applied." ■ In any event, "[t]he question of materiality, it is universally agreed, is an

---

[10]Section 25401 states that it is unlawful to offer or sell a security in California by means of a written or oral communication which includes an untrue statement of material facts or omits material facts.

[11]The choice of the word "would" in place of "might" falls in line with what appears to be the accepted test for materiality. (*TSC Industries, Inc.* v. *Northway, Inc.* (1976) 426 U.S. 438, 445, 448-449 [48 L.Ed.2d 757, 763-766, 96 S.Ct. 2126].)

*objective* one, involving the significance of an omitted or misrepresented fact to a reasonable investor." (*TSC Industries, Inc.* v. *Northway, Inc., supra,* 426 U.S. at p. 445 [48 L.Ed.2d at p. 763]; italics added.) We conclude that the record adequately supports the court's ultimate finding applying either a subjective or objective test.

Consequently, we conclude that these findings, when considered in toto, obviate the necessity for more specific findings in accordance with appellant's requests. A conclusion to the contrary merely provides the parties with evidentiary surplusage that does not resolve any controverted issue or ambiguous statement. The record provides ample evidence without the necessity of inferential treatment of this court that the factual and legal basis for its decision as to each of the principal controverted issues has been addressed as well as supported. (See Code Civ. Proc., § 632.)

■ We next address appellant's second contention that the trial court erred in granting respondents' motion for judgment where the respondents, as fiduciaries, bore the burden of establishing the inherent fairness and good faith of their actions and where said burden was not sustained. Appellant argues that "respondents, as controlling shareholders, clearly owed fiduciary duties to act with inherent fairness and good faith towards appellant."

■ Generally, a dominant or controlling stockholder or group of stockholders must act in a fiduciary capacity to the corporation and the minority shareholders. Their dealings with the minority shareholders are subject to rigorous scrutiny. Where any of their contracts or engagements with the minority is challenged, the burden is on the director or stockholder not only to prove the good faith of the transaction, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. " 'The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.' " (*Efron* v. *Kalmanovitz* (1964) 226 Cal.App.2d 546, 556, [38 Cal.Rptr. 148], quoting from *Pepper* v. *Litton* (1939) 308 U.S. 295, 306-307 [84 L.Ed. 281, 289, 60 S.Ct. 238]; see also *Jones* v. *H. F. Ahmanson & Co., supra,* 1 Cal.3d at p. 108; *Mueller* v. *Macban* (1976) 62 Cal.App.3d 258, 277 [132 Cal.Rptr. 222].)

■ First, Franklin Cook, a 4.8 percent *minority* shareholder in First Financial, was the tender offeror. The record reflects that "Frank Cook did not enter into any agreement before the offer or during the tender period as to what would happen if plaintiff tendered his shares." Consequently, respondent Franklin Cook, as a minority shareholder acting in an independent

and individual capacity, did not owe or breach any special fiduciary duty to Lynch. Such a finding by the trial court is well documented by the record.

Nevertheless, appellant alleges that since Franklin Cook is the nephew of Charles Cook, the majority shareholder of First Financial, and since First Financial eventually purchased the stock that Franklin had purchased from him, Franklin was acting in concert with Charles, thereby requiring the application of the more stringent majority burden of proof. He argues that respondents intended their representations to be understood that Franklin Cook would purchase the shares, that Franklin Cook would thereafter own the shares, and that Charles Cook or First Financial would not purchase the shares nor thereafter own them. Appellant maintains respondents never intended to allow Franklin Cook to own appellant's shares. Unfortunately, neither the record nor the trial court's findings fully supports appellant's contention.

The fact that the subsequent purchaser of the stock from Franklin Cook was First Financial (i.e., Charles Cook) does not afford appellant the shift to respondents of the burden of proving the inherent fairness of the tender offer transaction which he seeks. The court specifically found that "There was no representation that the stock would not at some time in the future be transferred to another person or an entity which was influenced by Charles Cook. It is incredible to be asked to believe that the Plaintiff, knowing that Frank Cook was the nephew of Charles Cook, that he was the heir apparent, that they were working together in the Cook enterprises, would believe that there was no possibility in the future that the shares tendered by Plaintiff might end up in the hands of some other Cook entity and that he was safe in selling to Frank because the shares would be out of Charlie Cook's control." The court also determined that "the tender offer and subsequent purchase by First Financial . . . did not constitute a breach of fiduciary duty on the part of defendants, or any of them." These findings relate directly to resolving the question of respondents' fairness in the transaction.

■ Even assuming that respondents acted in concert, appellant still fails to adequately provide documented evidence, contrary to the court's finding, that respondents, acting in concert, breached a fiduciary duty to him.[12] Appellant asserts that under the totality of the circumstances, all of the respondents as majority (49.82 percent) shareholders breached their fiduciary

---

[12]Since we conclude that the court was correct in determining that no breach of fiduciary duty resulted, we need not discuss appellant's contention that the court erred in applying Code of Civil Procedure section 339, subdivision 1, to said cause of action for breach of fiduciary duty.

duty to him as a minority (37.7 percent) shareholder and director of First Financial.

The record reveals that prior to the tender offer, respondents offered to appellant an opportunity to participate in the tender offer and maintain if not increase his holding in First Financial. Appellant declined the opportunity exclusively because of his financial commitment to Zion. There was little in the form of concrete evidence introduced by appellant which established that respondents, acting individually or collectively, were completely knowledgeable or responsible for appellant's then financial situation with Zion or with First Financial. Appellant's contention as to the amount of information that respondents had as to his financial condition at the time of the tender offer was found to be highly exaggerated. The evidence proffered was considered speculative and of little probative value. The court felt that "Mr. Lynch's recollection of his state of mind is colored, perhaps inadvertently by the passage of time and his financial interest and possibly [by] his emotional feelings towards Mr. Charles Cook." We conclude the court did not err in failing to find any breach of fiduciary duty.

 Appellant next contends that the trial court erred in holding that respondents' misrepresentations and omissions were not material. He states that "The misrepresentations and omissions utilized by the respondents were material to appellant and without them, under all the circumstances then existing, including those created by [him], he would not have tendered his shares and would not have been squeezed-out of First Financial. Appellant specifically testified to that effect in no uncertain terms. [¶] [Finally] if respondents had made full and honest disclosure to appellant, their arguments that their misrepresentations and omissions were not material because appellant had no choice; because, although they deliberately timed their tender offer when appellant's finances were 'not necessarily plush,' it was Zions that forced him to sell, and because other outside factors controlled his decision, might be more credible. However, respondents were neither open nor . . . straight forward with appellant. They deliberately, unfairly and in bad faith withheld from Appellant the primary purpose of the tender offer and the identity of the ultimate purchaser of the shares."

Appellant relies exclusively upon section 538 of the Restatement Second of Torts and *TSC Industries, Inc.* v. *Northway, Inc., supra,* 426 U.S. 438 in support of his argument. Neither the cited law nor facts are persuasive to justify reversal on this issue.

Section 538 of the Restatement Second of Torts provides that:

"(1) Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material.

"(2) The matter is material if

" . . . . . . . . . . . . . . . . . . .

"(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."

Comment (f) indicates that while the fact may not be important to a reasonable man, "[o]ne who practices upon another's known idiosyncracies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish."

Respondents did not practice upon Lynch's idiosyncracies. Zion forced Lynch's tender of shares. Lynch had encumbered his shares as collateral for a loan he was attempting to satisfy. The court specifically found that. The record undeniably confirms that. Under all the circumstances then existing, including those created by appellant, Lynch appears to have placed himself in a financial straitjacket where he had few alternatives but to tender his interest in First Financial.

As to appellant's allegation that respondents deliberately timed their tender offer to the date that appellant's loan to Zion became due, the court was unable to conclude that respondents were that well informed of appellant's financial dealings with Zion.

Finally, regarding the allegation that respondents deliberately, unfairly and in bad faith withheld from appellant the primary purpose of the tender offer and the identity of the ultimate purchases, the stated purpose of the tender offer was to increase Franklin's investment in First Financial. An additional purpose was the reduction of the number of shareholders to less than 300 designed to permit First Financial to terminate registration of its shares under the Securities and Exchange Act of 1934. Appellant argues that the actual nondisclosed purpose of the tender offer was to eliminate him from the corporation. That may be true but the trial court concluded otherwise. On its face, the tender offer document was an offer to purchase "each issued and outstanding shares of the $.50 par value capital stock . . . [of the] holders of stock of the company."

Franklin's offer was directed to all First Financial shareholders, not exclusively to appellant. It is a fair and reasonable assumption that a buy-out of one's stock can reasonably be concluded to mean a termination of that shareholder's interest in the corporation.

*TSC Industries, Inc.* v. *Northway, Inc., supra,* 426 U.S. 438 involved a situation where National Industries purchased 34 percent of the voting securities of TSC and National issued a joint proxy statement recommending approval of the proposed exchange of stock. A TSC shareholder brought an action seeking damages and rescission against National and TSC for alleged violations of SEC rule 14a-9. Rule 14a-9 prohibits proxy solicitations containing any false or misleading statements or omissions respecting any material fact. Defendants omitted the degree of National's control over TSC and the favorability of the terms of the proposal to TSC shareholders. The Supreme Court concluded that (1) an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote; and (2) the plaintiff was not entitled to a partial summary judgment, since none of the omissions allegedly in violation of rule 14a-9 were materially misleading as a matter of law.

Appellant relies on *TSC* because the Supreme Court's definition of materiality was derived from section 538(2)(b) of the Restatement of Torts. He submits that in the case of face-to-face or deliberately deceptive dealings, he is required only to show that the misrepresentations or omissions were important to his decision to sell. This he contends he has done; this we find he has not done.

As noted earlier, the test of materiality is universally agreed to be an *objective* one. *TSC, supra,* therefore does not aid appellant's argument. The only material omission found by the court was the fact that Franklin Cook was, in a sense, acting on behalf of Charles Cook in making the tender offer. While arguably such an omission could be deemed fatal, we are not convinced such information can be deemed material in this instance.

The court concluded that while this fact was not disclosed, Mr. Lynch did not rely on the omission of this disclosure in tendering his shares. It was common knowledge that Franklin Cook was the close nephew of Charles Cook. That the two had a close working relationship in First Financial as well as Charles Cook's other enterprises was also no secret. Finally, there was full disclosure by Franklin Cook that a substantial portion of the $1,733,120 needed to make the purchase would be obtained from Cook Bros. itself. Lynch persuaded neither the trial court nor us that he was unaware of this evidence regarding a Charles Cook connection, or that respondents, and not Zion, enticed his sale.

Finally, appellant contends that the trial court erred in holding that reliance was required in each of appellant's causes of action. He predicates this argument on his conclusion that he is entitled to rely on the representations of a fiduciary without a duty of investigation, and that reliance is not

required for a violation of Corporations Code section 25401. Section 25401 of the Corporations Code provides as follows: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a *material* fact or omits to state a *material* fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." (Italics added.)

This section is essentially identical to clause (b) of rule 10b-5 promulgated under section 10(b) of the Securities Exchange Act of 1934 and governs negligent misrepresentation in securities sales. (Cf. *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 717 [136 Cal.Rptr. 871].)

Corporations Code section 25501 provides in pertinent part: "Any person who violates Section 25401 shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that *the plaintiff knew the facts* concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission. . . ." (Italics added.) Respondents assert that an interpretation of these two statutes as well as the case of *Bowden* v. *Robinson, supra,* 67 Cal.App.3d at page 717,[13] make it clear that proof of reliance on the part of appellant was necessary. We disagree.

The court in *Bowden* went to great lengths distinguishing common law negligent misrepresentation and statutory negligent misrepresentation (§ 25401). It concluded that: "Sections 25401 and 25501 differ from common law negligent misrepresentation in that: (1) proof of reliance is not required, (2) although the fact misrepresented or omitted must be 'material,' no proof of causation is required, and (3) plaintiff need not plead defendant's negligence. . . . [A]s a defense the defendant may: (1) prove that he exercised reasonable care and did not know of the untruth or omission, (2) show that even if he had exercised reasonable care, he would not have known of the untruth or omission, and (3) show that the plaintiff knew the facts concerning the untruth or omission. (Corp. Code, § 25501; and see 2 Ballantine & Sterling, Cal. Corporation Laws, § 463.03, pp. 932.40-932.41.)" (*Bowden* v. *Robinson, supra,* 67 Cal.App.3d at p. 715.)

---

[13]Respondents cite to *Bowden,* page 717, where the court stated: "[¶] In the instant case, the only relevance of the question of legality of the offer or sale under the qualifications provisions would be in determining whether the representation made was a *material fact upon which plaintiff could reasonably rely.*" (Italics added.)

██ We conclude that the court in *Bowden* was correct in determining that reliance on any alleged misstatements or omissions is not necessary under section 25401.

The trial court here concluded that "Due to the lack of reliance by plaintiff on the written tender offer materials, plaintiff does not have any claim against the defendants, or any of them, for fraud, constructive fraud, fraud by a fiduciary, negligent misrepresentation or violations of Corporations Code, Section 25401, on account of any information contained in the written tender offer materials or on account of any information omitted from the written tender offer materials."

In appellant's stated causes of action for fraud, its derivatives, and for negligent misrepresentation, proof of reliance was required as these causes of action are based on the common law. Statutorily, however, section 25401 does not require a showing of reliance. The trial court, therefore, was in error in impliedly declaring the opposite. However, we adjudge the court's error in this particular instance to have been nonprejudicial.

"Section 25401 only applies to an 'untrue statement of material fact' or an omission to state a 'material fact *in order to make the statements made, in light of the circumstances under which they are made, not misleading.*' (Italics added.) Section 25401 does not apply to simple nondisclosure." (*Bowden* v. *Robinson, supra,* 67 Cal.App.3d at p. 717.)

The only nondisclosure evidenced in the record is that Franklin Cook, acting in a quasi-representative capacity on behalf of Charles Cook, did not disclose same or to disclose what we consider to be the obvious; that it was foreseeable that Charles Cook may one day obtain control over the stock his nephew purchased. While such a nondisclosure may or may not have been material (it is not disputed that an open discord between Lynch and Charles Cook existed), the record is absolutely clear that the court based its decision on its supported finding that Lynch sold his interest in First Financial as a result of Zion's, not the respondents', influence. True enough, Lynch was not required to show reliance under section 25401; however, the erroneous misstatement of the trial court would not alter the outcome.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.