**ROBINSON, LEATHAM & NELSON, INC., Plaintiff–Appellant,**

v.

**John M. NELSON, IV, Defendant–Appellee.**

No. 95–16604.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1997.

Decided March 26, 1997.

Catherine S. Meulemans, Richter, Senn & Palumbo, San Francisco, California, for defendant-appellee.

Before: LAY,* GOODWIN, and SCHROEDER, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge:

Robinson, Leatham & Nelson, Inc. ("RLN"), appeals the judgment as a matter of law in favor of John Nelson which took from the jury a major claim in a consolidated trial of multiple claims between the parties. The district court submitted RLN's contract claims to the jury, which found for RLN, and that judgment is not appealed. We review only the district court ruling against RLN's breach of fiduciary duty claim against Nelson and the consequential removal from the jury of the punitive damages issue. We affirm.

## FACTUAL BACKGROUND

RLN was formed when Nelson in 1988 joined a company called RLC which had been founded by John Leatham and James Robinson in 1987 as a real estate investment banking company. Nelson became a director and twenty-seven percent shareholder. The relationship ended in 1989 and this litigation began in 1990.

In 1989, RLN began negotiations with Winthrop Financial Associates ("WFA") to collaborate in the restructuring of limited partnerships using the "expansion method," a system that enabled corporate investors to receive tax benefits that could no longer be used by individual investors after tax laws changed in 1986. The principals in RLN all had prior dealings with WFA, and Nelson remained a partner in a WFA related enterprise. While nothing turns on the dispute in this case, RLN claimed to have developed

Michael R. Hudson, Michael R. Hudson Law Office, San Francisco, California; Joseph H. Walsh, Menard, Murphy & Walsh, Boston, Massachusetts, for plaintiff-appellant.

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

the restructuring scheme out of which this dispute eventually grew, while Nelson claimed that it was a matter of common usage within the real estate investment, HUD exploitation, and tax avoidance industry.

On May 8, 1989, RLN entered into a Memorandum of Understanding with WFA to restructure four Net Lease Partnerships ("NLPs"). The Memorandum provided that RLN would receive forty-five percent of the fees earned if it procured a corporate investor for the restructuring deal by August 15, 1989 or, so long as RLN had performed substantially all of the activities it had agreed in the Memorandum to perform, forty percent of the fees earned if WFA secured the corporate investor. Entities known as the Linnaeus Partnerships were general partners of the NLPs, and Nelson was a partner in the Linnaeus group. At this time, RLN and Nelson believed, as represented to them by WFA, that WFA had exclusive control of the Linnaeus Partnerships as their sole general partner. Nelson, prior to joining RLN, had been a founding member of WFA. Like Nelson, other members of WFA were also general partners of the Linnaeus Partnerships, but Robinson and Leatham were not.

Nelson entered into a buy-out agreement with WFA, in which he attempted to part company with that organization. The agreement included an amendment to the Linnaeus Partnerships in which he relinquished his interest in Linnaeus to WFA. At this point, he intended to terminate his partnership or equity interests in WFA and in Linnaeus. However, as will be seen, this departure was not completed, and Nelson remained a Linnaeus partner and thus retained a relationship with WFA despite his "buy-out."

Meanwhile, pursuant to the 1989 Memorandum, RLN attempted to secure Imperial Corporation of America ("ICA") as a corporate investor in the restructuring of four NLPs. However, ICA did not consummate its investment by August 15, the agreed deadline. RLN blamed WFA for the failure. Nelson said that Robinson, of RLN, had demanded equity contributions that ICA could not, or would not meet. The assignment of fault for ICA's election not to participate in the restructure plan is not material in this appeal. For whatever reason, the hoped for restructuring of the four NLPs, with anticipated substantial fees for RLN did not occur. RLN thus lost a source of needed funds. When WFA afterward, without inviting RLN to participate, accomplished two restructurings and did receive fees, RLN accused Nelson of violating a fiduciary duty owed RLN, and filed the claim presently on appeal.

Meanwhile, in September of 1989, Nelson became aware that because of an error in preparing documents related to his buy-out, he was still considered a general partner of the Linnaeus Partnerships. RLN hoped Nelson's renewed status as a general partner of the Linnaeus Partnerships would restore his influence with WFA, and that he would encourage WFA to allow RLN to participate in future restructurings. WFA, instead, in November of 1989, sued RLN, together with Robinson, Leatham and Nelson individually. There is no evidence that Nelson in any manner provoked or caused WFA to sue RLN and its three principals. The suit produced a temporary restraining order prohibiting RLN and Nelson from interfering with WFA's restructuring deals.

In December, 1989, Nelson promised Robinson and Leatham that he would not settle with WFA without RLN's participation and consent. Ten days later, Nelson sent another letter to Robinson and Leatham, this time informing them that he intended to settle with WFA, that he was advising them to do the same, and that he was resigning from RLN. This change of mind on Nelson's part is evidence of his desire to get out of litigation, but is not evidence, by itself, of a breach of fiduciary duty. Unless Nelson was still a director of RLN, and unless he performed some act hostile to RLN, other than retaining his pre-existing interest in Linnaeus and in WFA which he held long before he joined RLN, his settlement with WFA on December 28 was a neutral act.

The terms of the settlement provided that Nelson, and the other general partners of Linnaeus, would give control of the Linnaeus Partnerships to WFA, would receive a per-

centage of the fees to be earned by WFA on the restructurings, would receive payments and promises of indemnity already owed by WFA from their prior relationships, and would cooperate in settling and defending against any claims by RLN against WFA.

After WFA later completed the two restructurings, RLN asserted that in dealing with WFA, Nelson violated his duty to RLN, and of course, deprived it of the fees it had expected to earn in restructuring NLPs. RLN also asserted that Nelson's breach of his fiduciary duty deprived RLN of assets and left it unable to pursue its claims against WFA. Nelson asserted that he had timely separated himself, and his personal assets, from RLN when he resigned. He asserted that he was free to settle his personal litigation with WFA, and had recommended to his associates in RLN that they should also settle. He contended that as an investor, he had a right to depart from RLN and do business with WFA, so long as he did not betray any confidence or take personal advantage of any business opportunity rightfully belonging to RLN.

The district court concluded that RLN had produced no evidence of a continuing fiduciary relationship between RLN and Nelson at the time the WFA restructuring transactions occurred, and that there was no evidence of a breach of any fiduciary duty owed from Nelson to RLN. The appeal essentially raises the issue whether a material question of fact remained in the case at the time the court ruled in favor of Nelson on the fiduciary claim.

### I. *Burden of Proof*

■ RLN argues that the district court improperly placed the burden of proof on RLN to prove that Nelson breached his fiduciary duty. RLN also argues that the district court erred by not viewing the evidence in the light most favorable to RLN, the nonmoving party. Nelson contends that RLN failed to prove that Nelson was a fiduciary at material times, and thus failed to shift the burden of proof to him as a defendant. We agree.

State law governs in this diversity action on such questions as which party bears the burden of proof and the parameters of a fiduciary's duty to his corporation. *See generally, Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

During the trial, the only specific evidence of any breach of duty on the part of Nelson to RLN was the breach of contract claim on which the jury found for RLN. The district court correctly treated this as a claim arising out of wholly unrelated activities. (A major claim in the consolidated trial was that Nelson had withheld fees owed to RLN on a transaction known as the First Maine Transaction; and he had instructed others to divert fees owed to RLN on still another transaction, known as the Northwestern Transaction. These fee disputes were submitted to, and resolved by, the jury in RLN's favor, as noted, and are no longer in this case.)

The evidence that Nelson breached a fee agreement with RLN in unrelated transactions may shed some light on his business methods in general, but did not tend to prove any disputed fact about his dealings with WFA in restructuring NLPs after he ended his relationship with RLN.

In support of its claim that Nelson bore the burden of proof, RLN cites *Heckmann v. Ahmanson,* 168 Cal.App.3d 119, 214 Cal. Rptr. 177 (2 Dist.1985), in which a California court of appeal restated California's law regarding a fiduciary's burden to prove the inherent fairness to the corporation of a transaction with the corporation. The court stated: "[o]nce it is shown a director received a personal benefit from the transaction ... the burden shifts to the director to demonstrate not only the transaction was entered in good faith, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Id.,* 214 Cal.Rptr. at 183 (citing *Lynch v. Cook,* 148 Cal.App.3d 1072, 196 Cal.Rptr. 544 (2 Dist.1983) *overruled on other grounds by Arceneaux v. Arceneaux,* 51 Cal.3d 1130, 275 Cal.Rptr. 797, 801, 800 P.2d 1227 (1990)).

There is no controversy in this appeal about the general duty of a fiduciary during the existence of that relationship. Nelson was no longer a director of RLN after his

resignation. The transactions with WFA were not transactions with RLN, nor were they transactions in which RLN could legally assert a right to be included.

The question before the district court was whether Nelson (1) remained in a fiduciary relationship with his former associates in RLN at the times in question; and (2) whether the benefit he received from his interests in Linnaeus, and thus in WFA despite his buy-out attempt, was a benefit from a transaction involving RLN. The record shows only that the benefit he received was a percentage of the fees earned by WFA on the restructurings. There is no evidence that RLN possessed any business opportunity that could have been exploited to its benefit. Nelson was acting on his own account after he had left RLN. The record contains no evidence that Nelson had a personal role in the restructuring transactions, or that his benefit from fees was derived from anything more than whatever ownership interest he retained in Linnaeus as a result of his personal arrangements with which RLN had no connection.

Nelson's transaction with WFA was independent of RLN. Nelson was free to settle his dispute with WFA, and he recommended to his associates in RLN that they do likewise. RLN produced no evidence from which a trier of fact could impute bad faith to Nelson in these dealings.

Nelson's former position with RLN did not give him an advantage in his participation with WFA. Nelson's relationship with WFA preexisted his relationship with RLN. RLN points to no evidence that Nelson carried any trade secrets from RLN to WFA, or performed any act hostile to RLN. The appeal cites no authority for the proposition that an investor may not retain a profitable investment in one company when he invests in another company.

If an investment creates a potential conflict of interest, the usual rules of disclosure, and, if a fiduciary relationship exists, fiduciary rules, will apply, but before claiming a breach of a duty, the plaintiff has the burden of establishing facts from which the duty can be derived.

In this case, RLN was not in a relationship with either Linnaeus or WFA that would enable RLN to share in fees earned by those entities for restructurings unless it performed duties pursuant to the 1989 Memorandum of Understanding with WFA. There is no evidence of such performance. Nelson, on the basis of his position as a general partner of Linnaeus, was in a position to share in fees so earned.

## II. *Business Opportunity*

RLN bases its breach of fiduciary duty claim in part upon its allegation that Nelson usurped RLN's corporate opportunities with the WFA restructurings. RLN's failure of proof lies in its failure to show that it ever had "a corporate opportunity" to proceed with the restructuring activities undertaken by WFA. RLN had been sued by WFA, and RLN had lost, temporarily at least, whatever opportunities RLN may have had in sharing business with WFA. It had also lost, through the running of time, the opportunity to perform one of its anticipated restructuring transactions. Nelson had been sued individually by WFA and then had settled with WFA. This history does not show that RLN retained a potential business opportunity with respect to the restructuring transactions with which WFA went forward. Again, RLN points to the unrelated fee dispute with Nelson in the Northwestern and First Maine transactions, as evidence of a breach of fiduciary duty. While the evidence of prior bad acts may have been admissible, for some purposes, it sheds no light on the existence of a business opportunity, or on a breach of any fiduciary duty in relation to the WFA restructuring transactions.

The corporate opportunity doctrine prohibits a fiduciary from acquiring, "in opposition to the corporation, property in which the corporation has an interest or tangible expectancy.... [A] corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Kelegian v. Mgrdichian*, 33 Cal.App.4th 982, 39 Cal. Rptr.2d 390, 393–94 (2 Dist.1995) (quoting 3 Fletcher Cyclopedia Corporations (1994 rev.)

§ 861.10, p. 284, fns. omitted.). Whether or not a corporate opportunity exists is largely a question of fact "to be determined from the objective facts and surrounding circumstances existing at the time the opportunity arises." *Kelegian,* 39 Cal.Rptr.2d at 394 (citing *Thompson v. Price,* 251 Cal.App.2d 182, 59 Cal.Rptr. 174 (4 Dist.1967)); *see also Mueller v. MacBan,* 62 Cal.App.3d 258, 132 Cal.Rptr. 222, 231 (1 Dist.1976).

With respect to the WFA transactions, RLN claims that it presented sufficient evidence for a jury to find: (1) that RLN was entitled to share in fees to be earned on the Net Lease Partnership restructurings based on its performance of its obligations; (2) that RLN had the opportunity to earn fees on the Net Lease Partnership restructurings independent of its right to share in fees; and (3) that "Nelson usurped a corporate opportunity belonging to RLN and breached his fiduciary duty to RLN when he settled with WFA." Therefore, RLN argues, the district court erred in ruling that no reasonable jury could find for RLN on its breach of fiduciary duty cause of action.

RLN's first claim is that it was entitled to receive forty percent of the fees earned for the restructurings because it substantially performed its obligations as required by a no longer viable Memorandum. However, RLN produced no evidence that it had substantially performed any functions anticipated by the Memorandum.

There was evidence that in fact Nelson negotiated with WFA. Nelson claims to have arranged the best deal possible with WFA but RLN asserts that Nelson was not negotiating in good faith. RLN points to Nelson's concurrent negotiations with WFA relating to his new-found status as a general partner of Linnaeus. But RLN did not connect Nelson's actions as a partner of Linnaeus with any concurrent injury to RLN. There was no proof that he failed to "affirmatively [ ] protect the interests of the corporation committed to his charge." *See Bancroft–Whitney Co. v. Glen,* 64 Cal.2d 327, 49 Cal.Rptr. 825, 839, 411 P.2d 921 (1966). Indeed, there is no evidence that RLN still had any legally protectable right to services from Nelson, the departed director of the failed company.

RLN next argues that a jury could have found that RLN had a legitimate corporate opportunity to participate in future restructurings of NLPs and earn fees therefrom. RLN states that because WFA was not the sole general partner of the Linnaeus Partnerships it did not have a competitive advantage over RLN or a greater right to restructure the NLPs than RLN had. RLN then argues that "as equal competitors with expertise in the business of limited partnership restructurings, *either* RLN or WFA could have restructured the Net Lease Partnerships independently of one another, and earned fees on any such restructurings." RLN claims that Nelson's fiduciary duties included "help[ing] RLN achieve its business objectives, one of which was to participate in the restructuring of the Net Lease Partnerships." But RLN does not cite any fact from which a jury could find that Nelson had a duty to use his position in another partnership to funnel business to RLN.

RLN fails even to demonstrate that Nelson interfered with its opportunity to restructure future partnerships itself, except to point to the settlement agreement with WFA in which Nelson and the other general partners of Linnaeus agreed to give up control of the Linnaeus Partnerships to WFA thereby giving WFA control over the NLPs. RLN claims this is ample evidence of Nelson's breach of fiduciary duty. However, Nelson did not breach any obligations to RLN by selling his control in the Linnaeus Partnerships, something that he had attempted to do prior to his joining RLN. This history is not evidence of bad faith on the part of Nelson. He suddenly found himself once again a general partner of the Linnaeus Partnerships. His deteriorating relations with his associates in RLN may explain why he would want to dispose of his RLN interest. That evidence did not affect his right to dispose of, or keep, his interest in Linnaeus. The evidence at most shows that Nelson did not use his position with Linnaeus to put a stop to WFA's restructuring of the NLPs, assuming he had the ability to stop WFA. Nelson was not the only general partner of Linnaeus.

There is no evidence that his vote alone would have had any effect on the management of the restructurings. The question, now raised by hindsight, whether Nelson ever had a veto power in Linnaeus, which he had failed to exercise on behalf of RLN, does not appear to have been raised in the trial. In any event, there is no evidence that he had a veto power. In these circumstances, Nelson's inaction does not amount to a breach of fiduciary duty.

Furthermore, the abstract notion that RLN could restructure the partnerships does not amount to a "corporate opportunity" as contemplated by the California courts. *See e.g., MacIsaac v. Pozzo,* 81 Cal.App.2d 278, 284, 183 P.2d 910 (Cal.App. 2 Dist.1947). RLN must show it had a reasonable expectancy to do the restructurings. *Id.* It must show also that it had the financial resources to take advantage of these opportunities. *Id.; see also Kelegian,* 39 Cal.Rptr.2d at 395. Although it may have hoped to, RLN cannot claim to have expected to do future restructurings of the NLPs because its agreement with WFA had expired and only later did it learn that WFA did not control the general partners of the NLPs. Nelson's status as a general partner of Linnaeus did not give RLN a reasonable expectancy to work with the NLPs. RLN had no evidence of ability to complete the restructurings.

Nelson did not become privy to the transaction with WFA through his position with RLN and he did not "use a trust opportunity for personal advantage." *MacIsaac,* 81 Cal. App.2d at 285, 183 P.2d 910. It is true that Nelson negotiated with WFA, and the result was to benefit himself, but his seeking an advantage for himself was not in opposition of RLN. RLN could not have negotiated a similar deal for itself.

The trial court correctly concluded that there was no evidence to go to the jury on the claim that Nelson usurped RLN's corporate opportunity.

III. *Punitive Damages*

The district court appropriately withdrew RLN's punitive damages claim because the underlying cause of action, breach of fiducia-ry duty, was correctly withdrawn from the jury. *See* Cal. Civ.Code § 3294(a).

## CONCLUSION

Even viewing the evidence in the light most favorable to RLN, the evidence presented cannot support a verdict for RLN on its breach of fiduciary duty cause of action. The judgment was free from error.

AFFIRMED.