Filed 1/15/25  Polaris Blue Holdings v. Friedman CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| POLARIS BLUE HOLDINGS, LLC, ET AL., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MARK FRIEDMAN ET AL., <br><br> Defendants and Respondents. | B316411 consolidated with B316414 and B320419 <br><br> (Los Angeles County Super. Ct. Nos. BC587482 and BC651099) |

APPEAL from judgments and an order of the Superior Court of Los Angeles County, Laura Seigle, Judge.  Affirmed.

Lurie & Kramer, Barak Lurie, and Brent A. Kramer, for Plaintiffs and Appellants.

No appearance for Respondents.

———————————————

Plaintiffs Polaris Blue Holdings, LLC (Polaris Blue) and Daniel Meyerov (Meyerov) sued defendants Mark Friedman (Mark),[1] Trident Group, Inc. (Trident), and OnlyBusiness.com, LLC (OnlyBusiness) for Mark's alleged mismanagement of OnlyBusiness and breach of a memorandum of agreement. Meyerov, who held an ownership interest in OnlyBusiness, later filed a separate lawsuit alleging derivative claims on OnlyBusiness's behalf against Mark, Trident, David Friedman (David), and Trident's Chief Financial Officer, Werner Clark (Clark). The cases were consolidated for trial. Following a bench trial, the trial court entered judgment for defendants in the former action. In the latter action, the court found Meyerov, suing on OnlyBusiness's behalf, was entitled to judgment against Mark and Trident, jointly and severally, for $14,258.45 for Mark's use of OnlyBusiness funds to pay personal expenses and Trident's failure to keep accurate records. Meyerov then moved for attorney fees under Code of Civil Procedure section 2033.420 in the latter action, asserting they were incurred to prove Mark improperly denied four requests for admissions in the former action. The court denied the motion.

Plaintiffs Polaris Blue and Meyerov appeal from the judgment in the former action, and Meyerov separately appeals from the judgment in the latter action and order denying attorney fees. We affirm the judgments and the order denying Meyerov's motion for attorney fees.

---

[1] Because Mark's stepfather, David Friedman, is a defendant in these consolidated appeals, we refer to Mark and David by their first names for clarity.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    OnlyBusiness Development**

Meyerov and Mark began working together in 2004 or 2005, and they formed Polaris Blue as a California limited liability company in July 2007.  Meyerov and Mark developed the concept for a separate business, OnlyBusiness.com, while working together at Polaris Blue.  According to Meyerov, OnlyBusiness provided web design, web development, and web hosting services for customers paying monthly membership fees.

In early 2008, Trident agreed to invest in the OnlyBusiness.com concept and Polaris Blue.  Meyerov, Mark, and Trident formed OnlyBusiness as a California limited liability company in March 2008.

Meyerov, Mark, and Trident signed an operating agreement, effective May 1, 2008, for OnlyBusiness.  They each owned a one-third interest in the company.  The agreement listed each member's initial capital contribution as $100.  Additionally, the agreement stated Trident was responsible for keeping complete and accurate books, records, and financial statements and that Trident would be the "'Tax Matters Partner'" for the company.  The agreement placed no restrictions on a member's ability to conduct other business, provided any such business did not directly compete with OnlyBusiness.

Mark and Meyerov were co-managing members of OnlyBusiness from the date of its formation until August 2012.  Due to different views about how to make OnlyBusiness successful, they decided to separate their business activities.

Mark, Trident, and Meyerov signed a memorandum of agreement in August 2012, effective September 1, 2012.  The parties agreed Meyerov was to own all of Polaris Blue and Mark

was to be OnlyBusiness's sole managing member. The agreement also adjusted the ownership percentages for OnlyBusiness as follows: Mark now had 35.32 percent, Trident retained 33.33 percent, and Meyerov had 31.34 percent. The agreement included a provision stating Mark would not, for one year from the effective date of the agreement, directly or indirectly solicit business from, or perform any work for, any Polaris Blue customer where such work was similar to that done by Polaris Blue.

In December 2012, Mark registered a business name for a new company he was starting called Mosisoft. According to Mark, Mosisoft operated on a "staffing model whereby clients would ask [Mosisoft] for resources, developers, [or] web developers, and [Mosisoft] would bill them" monthly for specific work clients requested.

More than a year later, in 2014, OnlyBusiness registered Goshly as a fictitious business name. Goshly was an updated version of OnlyBusiness that provided the same type of services. Mark created Goshly to allow customers' websites to scale to mobile devices.

## B. Plaintiffs' Direct Action

In July 2015, plaintiffs Meyerov and Polaris Blue filed a complaint against defendants Mark, Trident, and OnlyBusiness. Plaintiffs filed their operative fourth amended complaint in January 2017, which included claims alleging direct harm to plaintiffs and derivative claims alleging harm to OnlyBusiness. Before trial, the trial court sustained a demurrer by Mark, Trident, and OnlyBusiness to the derivative causes of action without leave to amend. Only the following claims alleging direct

harm to plaintiffs remained: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) fraud, (4) negligent misrepresentation, (5) breach of fiduciary duty, and (6) request for an accounting. We shall refer to this lawsuit as the "direct action."

Plaintiffs alleged Mark violated the parties' memorandum of agreement by competing with Polaris Blue, including through Mosisoft, during the agreement's non-compete period. Additionally, plaintiffs claimed Mark had plans to compete with Polaris Blue prior to entering into the agreement.

Plaintiffs also alleged Trident did not accurately maintain OnlyBusiness's books and records and improperly used Polaris Blue's tax identification number to report credit card revenue to Polaris Blue that did not belong to it. Plaintiffs added the $100 capital contributions listed in OnlyBusiness's operating agreement were "inadequately stated" because Meyerov contributed approximately $450,000 to the company. As to the accounting cause of action, plaintiffs alleged the amount of revenue taken from plaintiffs, and the profits due to plaintiffs, could not be ascertained without a full audit and accounting.

## C.    Meyerov's Derivative Action

In February 2017, Meyerov filed a separate lawsuit alleging derivative claims on behalf of OnlyBusiness. The operative pleading named OnlyBusiness as a nominal defendant and alleged claims against Mark, Trident, David, and Clark for (1) breach of fiduciary duty, (2) aiding and abetting breach of fiduciary duty, (3) conversion, (4) fraud, (5) negligent misrepresentation, (6) breach of contract, (7) breach of the implied covenant of good faith and fair dealing, (8) negligence,

5

(9) violation of Penal Code section 496, subdivision (c), (10) violation of Business and Professions Code section 17200, (11) declaratory relief, and (12) request for an accounting. We shall refer to this lawsuit as the "derivative action."

Meyerov, suing on behalf of OnlyBusiness, alleged Mark opened and operated competing ventures to OnlyBusiness, including Mosisoft, in violation of the company's operating agreement. Further, Meyerov alleged that Mark caused OnlyBusiness to pay for more than 12,000 hours of work for which the company did not receive any revenue.

Additionally, Meyerov alleged Mark used OnlyBusiness funds to pay for personal expenses and Clark and David were aware of Mark doing so and substantially assisted him. Meyerov further alleged Trident failed to maintain accurate books and records for OnlyBusiness and concealed Mark's use of the funds.

## D.    Bench Trial

The trial court related the direct and derivative actions. Because the cases involved overlapping issues and evidence, they were tried together in a nearly two-week bench trial beginning in February 2021.

After the close of evidence, the court issued a tentative decision requesting the parties address and identify specific evidence in their closing arguments. Meyerov filed objections to the tentative decision. The court heard closing arguments in June 2021.

About one month later, the trial court issued a proposed statement of decision in each of the related cases. Meyerov filed 82 single-spaced pages of objections to the proposed statement of decision concerning the derivative action. No party filed

objections concerning the direct action. The court overruled the objections.

**E.** **Statement of Decision and Judgments[2]**

In August 2021, the trial court issued its final statement of decision. The court stated the following about the trial: "A theme throughout the trial was [OnlyBusiness's] inaccurate and careless maintenance of its accounts and records, but without proof of significant resulting damages. For example, [OnlyBusiness's] accounting records contained mistakes and incorrect entries, and [OnlyBusiness's] tax returns used Polaris Blue's tax ID number for years. But Plaintiffs did not show much in damages from these mistakes and erroneous entries. The parties spent a lot of time during the trial on these kinds of errors, most of which had been corrected by the trial or did not have an appreciable impact. . . . Too much of this case was about messy business records and careless business practices without the kind of significant damages that warranted the substantial resources, lengthy trial, and many years devoted to this litigation."

1. *The Derivative Action*

The trial court began by addressing the claims in the derivative action. The court stated Meyerov's derivative claims focused on: "(a) [Mark's] use of Mosisoft and other entities to compete with [OnlyBusiness], (b) [Mark's] failure to charge customers for [OnlyBusiness's] work, (c) [Mark's]

---

[2]     Additional background facts concerning the trial and the trial court's statement of decision relevant to plaintiffs' challenges in their appeals are set forth in the discussion below for each claim of error.

misappropriation of [OnlyBusiness's] credit card revenue, (d) [Mark's] charging of personal expenses to [OnlyBusiness], and (e) [d]efendants' failure to properly maintain [OnlyBusiness's] books and records and prepare accurate tax returns."

The trial court determined Meyerov proved the breach of fiduciary duty claim against Mark relating to Mark's use of OnlyBusiness funds to pay personal expenses. Likewise, as to the conversion cause of action, the court found it was undisputed Mark used OnlyBusiness to pay for personal expenses. The court found that by the close of trial, Mark had not yet paid back $14,258.45, and thus, Meyerov proved OnlyBusiness incurred damages in that amount for both claims. The court also found Trident breached its contractual obligation under the OnlyBusiness operating agreement to keep accurate books and records, and Meyerov proved this also damaged OnlyBusiness in the amount of $14,258.45. The court found that Meyerov did not prove the remaining claims against Mark or the other defendants.

The trial court found Meyerov, suing derivatively on OnlyBusiness's behalf, was entitled to judgment in his favor against Mark and Trident, jointly and severally, in the amount of $14,258.45 to be paid to OnlyBusiness. Judgment was awarded in favor of defendants David and Clark, and OnlyBusiness was dismissed as a nominal defendant.

Meyerov timely appealed (case no. B316414).

2. *The Direct Action*

The trial court next addressed plaintiffs Meyerov's and Polaris Blue's claims in the direct action.

8

The trial court found plaintiffs failed to prove Mark improperly competed against Polaris Blue in violation of the parties' memorandum of agreement or fraudulently induced Meyerov to sign the agreement. Further, plaintiffs failed to prove OnlyBusiness's operating agreement misrepresented Meyerov's capital contribution. Lastly, the court found no breach of fiduciary duty based upon OnlyBusiness's use of Polaris Blue's tax identification number had been proved. The trial court ruled Mark, OnlyBusiness, and Trident were entitled to a judgment in their favor as to all claims, with plaintiffs Meyerov and Polaris Blue taking nothing from defendants.

Plaintiffs separately appealed from this judgment (case no. B316411).

## F.    Postjudgment Motion for Costs of Proof

In February 2022, after the judgments were entered, Meyerov filed a motion for attorney fees incurred as "costs of proof" pursuant to Code of Civil Procedure section 2033.420 in the derivative action. Mark filed a late opposition to the motion, which the trial court did not consider.

Meyerov sought $1,312,600.99 for attorney fees and costs related to Mark's denial of four requests for admissions that Mark responded to in November 2015 in the direct action. Meyerov argued that while Mark denied the truth of the matters asserted in the requests, Meyerov proved the truth of the matters at trial. The four requests for admissions asked Mark to admit: (1) he breached his fiduciary duty to Meyerov, (2) he used OnlyBusiness funds to pay personal expenses, (3) he violated the OnlyBusiness operating agreement, and (4) OnlyBusiness business expenses were not properly identified in its general

9

ledger.  Mark had objected to all the requests for admissions.  He also denied the first and third requests but admitted parts of the second and fourth requests.

The trial court denied Meyerov's motion for many reasons.  Those reasons included: (1) requests for admissions asking an adverse party to admit ultimate issues four months into a case, and before any significant discovery occurred, were not a basis for fees, (2) Meyerov served the requests for admissions in the direct action but filed his motion in the derivative action, (3) Meyerov did not show he proved the truth of the matters in the requests for admissions,[3] (4) Mark's responses were not all denials and included, for example, an admission that he used company funds to pay personal expenses, (5) Mark had reasonable grounds to believe he would prevail on the issues, and (6) Meyerov did not prove he incurred $1,312,600.99 in fees on the issues covered by the requests for admissions or that the amount was reasonable.

Meyerov timely appealed from the order (case no. B320419).  On our own motion, we consolidated the three appeals for purposes of oral argument and decision.

## DISCUSSION

### A. Standards of Review

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of

---

[3]    For example, one of the requests asked Mark to admit that he breached his fiduciary duty to Meyerov.  It was not proved that Mark breached a fiduciary duty to Meyerov in the direct action, and in the derivative action, the court found Mark breached a duty to OnlyBusiness.

10

review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.] 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.'" (*Ibid.*)

Typically, the substantial evidence test is implicated when a defendant contends the plaintiff succeeded at trial in spite of insufficient evidence. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) In this case, however, "the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 279 (*Shaw*); see *Sonic Manufacturing*, at p. 465.) Thus, "it is somewhat misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This is because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case." (*Shaw*, at p. 279.) "Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's

11

evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*Shaw*, at p. 279.)

In addition to the challenges to the bench verdict, Meyerov challenges the trial court's denial of his motion for costs of proof under Code of Civil Procedure section 2033.420. We review the denial of the motion for abuse of discretion. (*Pappas v. Chang* (2022) 75 Cal.App.5th 975, 993 (*Pappas*).)

## B.    Challenges to the Judgment in the Derivative Action (Case No. B316414)

In the appeal of the derivative action, Meyerov argues the trial court erred in determining he did not prove his claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, declaratory relief, and violation of Penal Code section 496. As to the conversion cause of action, Meyerov asserts the court should have awarded the full amount Meyerov sought to have Mark repay to OnlyBusiness, instead of the lesser amount the court ordered. Meyerov also asserts the court erred in determining he did not identify an unfair business practice in his unfair competition claim.

Nowhere in his opening brief does Meyerov summarize all the relevant facts or evidence that support the judgment. "'To overcome the trial court's factual findings,' the appellant is ""required to set forth in [appellant's] brief all the material evidence on the point and not merely [appellant's] own evidence. Unless this is done the error is deemed to be [forfeited].""" (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 598; see *Foreman & Clark Corp. v. Fallon*

12

(1971) 3 Cal.3d 875, 881 (*Foreman*) [If a party fails to set forth "'*all* the material evidence on the [appealed] point and *not merely their own evidence* . . . the error is deemed to be [forfeited]'"].) Thus, Meyerov's failure to set out the facts favorable to the judgment forfeits his challenges to the court's findings. However, this is not the only reason his appeal fails. To the extent Meyerov asserts the trial court erred in finding he failed to prove his causes of action, Meyerov does not show the evidence compels a finding in his favor as a matter of law for any claim. (*Shaw*, *supra*, 170 Cal.App.4th at p. 279.) Further, Meyerov does not establish the court committed a legal error in its ruling.

      1.    *Meyerov Failed to Prove the Breach of Fiduciary Duty Claim*

          a.    *Mark's Alleged Improper Competition with OnlyBusiness*

              i.    <u>*Corporate Opportunity Doctrine*</u>

Meyerov asserts Mark breached his fiduciary duty to OnlyBusiness by usurping a corporate opportunity. As set forth in *Kelegian v. Mgrdichian* (1995) 33 Cal.App.4th 982, 988 (*Kelegian*), the corporate opportunity doctrine "'prohibits one who occupies a fiduciary relationship to a corporation from acquiring, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence.'" "'Three tests have been recognized as standards for identifying a corporate opportunity: the "line of business" test, the "interest or expectancy" test, and the "fairness" test. Under any test, a corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which

13

the corporation has the capacity to engage.'" (*Ibid.*; *Center for Healthcare Education & Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1132.)

"However this doctrine does not exclude the fiduciary from all business activity of his own in the field in which he works for others. 'Generally, it is held that the directors or officers of a corporation are not, by reason of the fiduciary relationship they bear towards the corporation and the stockholders thereof, precluded from entering into and engaging in a business enterprise independent from, though similar to, that conducted by the corporation itself, provided in doing so they act in good faith and do not interfere with the business enjoyed by the corporation.'" (*Industrial Indem. Co. v. Golden State Co.* (1953) 117 Cal.App.2d 519, 533.) Whether a given corporate opportunity was wrongfully usurped is a question of fact to be determined from the circumstances existing at the time the opportunity arises. (*Center for Healthcare Education & Research, Inc.*, *supra*, 57 Cal.App.5th at p. 1132.)

ii. <u>*Meyerov Does Not Demonstrate the Trial Court Used an Incorrect Test*</u>

Meyerov claims the court used an overly strict "reasonable expectancy" test derived from a federal case, *Robinson, Leatham & Nelson, Inc. v. Nelson* (9th Cir. 1997) 109 F.3d 1388 (*Robinson*), instead of the tests identified in *Kelegian*. Meyerov asserts that no California court has required a corporation to have a reasonable expectancy in an opportunity usurped by an officer in order for a breach of fiduciary duty to occur. We reject this contention.

14

Contrary to Meyerov's assertion, the trial court's statement of decision recognized the three tests for identifying a corporate opportunity articulated in *Kelegian*. The court acknowledged that for the corporate opportunity doctrine to apply, the relevant opportunity must be property in which the corporation had a tangible expectancy. The court then cited *Robinson* for the proposition that the "abstract notion" a corporation could have engaged in an opportunity "does not amount to a 'corporate opportunity'" because a corporation must show it had a "reasonable expectancy" to do the opportunity at issue. (*Robinson, supra*, 109 F.3d at p. 1394, citing *MacIsaac v. Pozzo* (1947) 81 Cal.App.2d 278, 284 (*MacIsaac*).) The "reasonable expectancy" language Meyerov takes issue with appears in *MacIsaac*, the California case cited by *Robinson*.

*MacIsaac* defined the corporate opportunity doctrine as follows: "'[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an *interest or a reasonable expectancy*, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself.'" (*MacIsaac, supra*, 81 Cal.App.2d at p. 284, italics added, quoting *Guth v. Loft, Inc.* (Del. 1939) 23 Del. Ch. 255, 272–273.) The "reasonable expectancy" language in *MacIsaac* is consistent with, and arguably less stringent than, the "tangible expectancy" language used in the definition of the corporate opportunity

15

doctrine articulated in *Kelegian*.[4]  The trial court did not apply an incorrect test by stating Meyerov had to demonstrate OnlyBusiness had a reasonable, not abstract, expectancy in the corporate opportunity he claims Mark took.

>           iii.    *The Evidence Does Not Compel Finding*
>                   *Mark Usurped a Corporate Opportunity*
>                   *from OnlyBusiness*

At trial Meyerov argued Mark breached his fiduciary duties to OnlyBusiness by using Mosisoft to take corporate opportunities from OnlyBusiness.[5]  In particular, Meyerov argued Mark diverted custom web development work away from OnlyBusiness to Mosisoft.  The court found Meyerov failed to prove Mark took corporate opportunities from OnlyBusiness.

Meyerov contends the trial court erred because, contrary to its findings, OnlyBusiness and Mosisoft were not separate companies with different business models offering different services.  Meyerov argues substantial evidence revealed custom development services were reasonably incident to OnlyBusiness's business, and the company had the capacity to engage in that work, but Mark diverted such work to Mosisoft.  However, Meyerov's burden on appeal is not merely to show there was

---

[4]     In his brief, Meyerov concedes, "In California, the corporate opportunity doctrine 'prohibits one who occupies a fiduciary relationship to a corporation from acquiring, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or that is essential to its existence.'"

[5]     "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 526, fn. 3.)

16

substantial evidence to support a contrary finding. (*Lobo v. Tamco* (2014) 230 Cal.App.4th 438, 442.) The court found Meyerov did not meet his burden of showing Mark took a corporate opportunity from OnlyBusiness. To reverse this finding on appeal, Meyerov must demonstrate the evidence compels finding Mark usurped a corporate opportunity as a matter of law. (*Shaw*, *supra*, 170 Cal.App.4th at p. 279.) Meyerov does not meet this burden.

The OnlyBusiness operating agreement permitted the parties to conduct any other business or activity, "provided that such business or activity [did] not directly compete with the Company's business." The evidence showed OnlyBusiness operated on a "software as a service ('SaaS')" business model, charging customers for monthly memberships. It provided some development work for clients with monthly memberships, but not for clients without memberships, and such work was not a meaningful part of its business.

Mosisoft, on the other hand, operated as a staffing business that did custom development work for clients and did not sign-up customers for monthly memberships. Mark's expert testified Mosisoft was not a SaaS business and instead focused on completing specific projects for its customers. Mark's expert further testified that Mosisoft and Polaris Blue, but not OnlyBusiness, had very similar business models and were competing businesses. While OnlyBusiness and Mosisoft used some of the same third-party vendors, the companies used the vendors for largely different purposes.

Meyerov argues the trial court's determination that custom development work was not a meaningful part of OnlyBusiness's business erroneously relied on OnlyBusiness's books and records

instead of the forensic report of Meyerov's expert, Deborah Dickson. However, the court explicitly stated it did not find Dickson's "testimony helpful, reliable, well-reasoned, or founded on the evidence." "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility." (*Thompson, supra*, 6 Cal.App.5th at p. 981.)

Although Meyerov raises several other arguments in an attempt to show that Mark usurped OnlyBusiness's opportunities, none compel reversal. Meyerov argues OnlyBusiness had the capacity to provide custom development work for clients without memberships, but he does not cite any authority holding mere capacity to engage in an opportunity is sufficient to find a corporate opportunity existed. While Meyerov contends Mark developed the subject corporate opportunity using some OnlyBusiness resources, use of a corporation's resources does not, on its own, compel the conclusion that an opportunity belonged to that corporation. (*Center for Healthcare Education & Research, Inc., supra*, 57 Cal.App.5th at p. 1132.) Further, Meyerov contends all Mosisoft clients had memberships with OnlyBusiness, such that Mark was required to refer them all to OnlyBusiness. However, he points to no uncontradicted evidence in the record supporting this contention. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [if an appellant fails to support an argument with appropriate record citations, we find the argument forfeited]; see also *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 ["It is the duty of a party to support the arguments in [his] briefs by appropriate reference to the record, which includes providing exact page citations"].)

In sum, sufficient evidence supported the trial court's finding that providing custom web development services to

18

clients without memberships was not OnlyBusiness's line of business, or an opportunity in which OnlyBusiness had an interest or expectancy. (*Kelegian*, *supra*, 33 Cal.App.4th at p. 990.) Meyerov fails to demonstrate the evidence compels a different conclusion. (*Shaw*, *supra*, 170 Cal.App.4th at p. 279.)

   b.  *The Evidence Does Not Compel Finding Mark's Alleged Refusal to Charge Higher Rates Breached a Fiduciary Duty*

  Meyerov argued Mark also breached his fiduciary duty to OnlyBusiness by declining to charge its customers $60 to $120 per hour for vendor time. The trial court found Meyerov did not prove Mark failed to charge customers market rates or that Mark had a duty to charge customers higher rates. Meyerov contends the court wrongly concluded he did not prove this claim. We disagree.

  Meyerov asserts there was no dispute Mark could have charged higher rates for all custom web development work and that there was a long history of OnlyBusiness customers paying higher rates. Meyerov did not provide any record citations in support of either of these assertions.[6] (See *Grant–Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["Because '[t]here is no duty on this court to search the record for evidence'

---

[6] Meyerov cites to an "Ex.409.1-10" in arguing numerous OnlyBusiness customers paid the higher rates, but he fails to identify where in the record such evidence is located. While Meyerov lodged certain trial exhibits in his appeal from the judgment in the direct action, he did not lodge any exhibits in his appeal from the judgment in the derivative action. The exhibits lodged in the direct action do not contain an "Ex.409.1-10."

19

[citation], an appellate court *may* disregard any factual contention not supported by a proper citation to the record"].)

In any event, the evidence on this issue was disputed. Mark testified that sometimes when OnlyBusiness customers wanted a feature that would benefit other customers, OnlyBusiness would do the work to add the feature to the services it offered without charging the customer that requested it. The trial court did not find this was unreasonable, and Meyerov does not cite any authority holding that this practice constitutes a breach of a fiduciary duty.

Additionally, the trial court found multiple problems with the analysis and conclusions of Meyerov's expert, Dickson, regarding Mark charging the higher rates. The court determined Dickson had a "weak basis" for assuming all OnlyBusiness customers would pay rates of $60 to $120 per hour, as her assumption was based on an investor presentation Mark created in 2012. While Meyerov contended Mosisoft customers were charged the higher rates, the evidence showed that Mosisoft's profits were millions of dollars less than what they would have been if Mosisoft charged $60 to $120 per hour. The court inferred from this evidence that customers would not pay the higher rates, and Dickson never explained whether charging higher rates would have reduced OnlyBusiness's volume of business. Although Dickson's colleague, Ryan Nguyen, testified on rebuttal that Mosisoft charged customers $236 per hour, the court found the testimony "far from convincing" and a "flyer" at the end of trial rather than a serious opinion. As we do not reweigh the trial court's assessment of the evidence, Meyerov fails to show the court erred in finding he did not prove this claim. (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.)

c. *Meyerov Does Not Establish Mark Stole $1.4 Million in Credit Card Revenue*

Meyerov argued Mark took millions of dollars in credit card revenue from OnlyBusiness. The trial court determined Meyerov did not prove Mark took or mishandled any credit card funds. Meyerov asserts his experts demonstrated Mark diverted at least $1.4 million in credit card revenue he should have collected for OnlyBusiness. We are not persuaded.

Meyerov primarily relied on Dickson's testimony for this claim. Dickson testified she used Authorize.net reports to determine that more than $1.4 million in credit card payments was missing. She stated Authorize.net was the payment gateway responsible for reporting credit card transactions. She further testified that after Authorize.net reported credit card transactions, the payments were processed by Priority Payment Systems, which then turned the information over to the Bank of Omaha, before finally going to Wells Fargo, which held the bank account of OnlyBusiness.[7] When asked, Dickson did not point to any evidence showing where any missing money ultimately went. In its statement of decision, the trial court found several problems with Dickson's testimony.

The trial court first noted, assuming credit card funds were missing, Dickson did not show that they went to Mark or a non OnlyBusiness bank account. Meyerov argues this was error because Dickson used Authorize.net reports to show the

---

[7] There was additional testimony at trial explaining that Authorize.net, as a gateway, was a data collection program and tool that communicates the "approval or declination" of a transaction. Whereas Priority Payment System was the payment processor, which received the payments from a credit card issuer or bank.

payments were not deposited in OnlyBusiness bank accounts, which supports the conclusion that they were "diverted" by Mark. He asserts Authorize.net reports were reliably used for this purpose, as Clark testified at his deposition that he would reconcile Authorize.net reports to OnlyBusiness bank accounts on a monthly basis. However, Clark explained at trial that he misspoke at his deposition because "at the time there was some confusion as to Authorize.net versus Priority Payment Systems." Clark explained he disregarded Authorize.net as not being useful and had been reconciling Priority Payment Systems reports with OnlyBusiness bank accounts since 2009. Based on Clark's and Dickson's testimony, the court expressly found that Priority Payment Systems was a "more precise record of the amount of money collected from credit card transactions," and Priority Payment Systems documents matched relevant bank statements. The court did not find Authorize.net reports reliable in this regard.

Meyerov contends that under Code of Civil Procedure section 2025.620, subdivision (b),[8] the trial court erred in disregarding Clark's deposition testimony that Authorize.net reports were reconciled with OnlyBusiness bank accounts. However, section 2025.620 provides a party's or its agent's deposition testimony may be used at trial, even if they are

---

[8] Code of Civil Procedure section 2025.620, subdivision (b), states: "An adverse party may use for any purpose, a deposition of a party to the action, or of anyone who at the time of taking the deposition was an officer, director, managing agent, employee, agent, or designee under Section 2025.230 of a party. It is not ground for objection to the use of a deposition of a party under this subdivision by an adverse party that the deponent is available to testify, has testified, or will testify at the trial or other hearing."

available to testify.  It does not require the court to accept the deposition testimony over live testimony.  Meyerov does not cite any authority holding the court was required to credit Clark's deposition testimony over his trial testimony where Clark explained the reason for his prior statements.  Questions of credibility and resolution of conflicting evidence are for the trier of fact.  (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1229.)

Meyerov also contends the trial court erroneously determined Dickson's credit card analysis was unsupported because she testified she did not know whether she included Goshly (the company Mark later created to scale websites to mobile devices) revenue in her credit card analysis.  Meyerov asserts his other expert, Nguyen, clarified on rebuttal that they did not include Goshly amounts in Dickson's calculations.  However, the court was not required to credit Meyerov's experts on this point.  (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633 [testimony of expert witness is not conclusive and is to be given proper weight by trier of fact].)

> d. *Mark's Use of OnlyBusiness Funds to Pay Personal Expenses*
>> i. <u>*Meyerov Does Not Establish Mark was Required to Repay OnlyBusiness More than the Trial Court Determined*</u>

Meyerov also alleged Mark breached his fiduciary duties to OnlyBusiness by charging personal expenses to the company.  It was undisputed Mark used company funds to pay personal expenses.  Mark believed that because he loaned OnlyBusiness approximately $1.4 million, interest free, he could charge

23

personal expenses to the company and concurrently reduce the loan balance. Meyerov argued Mark charged at least $151,418 in personal expenses and that Mark was required to repay the full amount because his loan was not legally valid. The trial court found the loan was valid: under the OnlyBusiness operating agreement, Mark had the authority to borrow the $1.4 million on the company's behalf. However, the court also found that due to inaccurate accounting, OnlyBusiness paid for a number of Mark's personal expenses without a concurrent reduction in the loan balance. After trial began, the parties stipulated to the amounts Mark used for his personal expenses. Based on the parties' stipulations and evidence, the court determined Mark had improperly failed to reduce the loan balance by $14,258.45 by the time of trial. Thus, Meyerov proved OnlyBusiness incurred damages in this amount.

Meyerov contends the trial court's ruling was erroneous because the $1.4 million Mark provided to OnlyBusiness was not a valid loan; thus, Mark could not offset the amount of company funds he used to pay personal expenses against the balance of the alleged $1.4 million loan. Meyerov argues the full $151,418 used to pay Mark's expenses remains owing to OnlyBusiness. We are not persuaded.

Meyerov argues the trial court erroneously construed section 3.7 of the operating agreement as allowing Mark to loan OnlyBusiness money. Section 3.7 of the agreement states, "Any Member may, at the option of the Managing Members, at any time make or cause a loan to be made to the Company in any amount and on those terms upon which the Company and the Member agree."

24

However, the trial court's statement of decision shows it did not rely only on section 3.7 in determining Mark had authority to loan and borrow money for OnlyBusiness. The court found section 5.1 of the agreement gave Mark, as the sole managing member, authority to borrow the money. Section 5.1, subdivision (a), provides, "The Managing Members may take any and all actions necessary or deemed appropriate in connection with the management and operation of the Company as it may from time to time determine, including, without limitation, . . . borrowing of money . . . ."

Meyerov does not challenge the trial court's finding that section 5.1 of the operating agreement gave Mark the authority to borrow the money for OnlyBusiness. Nor does he cite any authority prohibiting managing members of LLCs from loaning money to their own companies.

Meyerov contends that Mark's loan to OnlyBusiness did not sufficiently define the repayment terms of the loan under Civil Code section 1912. This provision provides, "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." This provision says nothing about particular terms, such as an interest rate, being required for a valid loan. Similarly, the cases Meyerov cites do not state the terms specified by Meyerov are required in the context of a managing member loaning money to his or her LLC. (See e.g., *National Funding, Inc. v. Commercial Credit Counseling Services, Inc.* (9th Cir. 2020) 817 F. Appx. 380, 383; *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 115.) Accordingly, Meyerov does not establish the trial court

25

erred in finding he proved damages of only $14,258.45 for this claim.

> ii. *Meyerov Fails to Show Error as to the Conversion or Declaratory Relief Claims*

Meyerov argues the trial court should have ruled Mark converted the full $151,418, instead of crediting him with repayment for funds of "illegitimate loans," and that the trial court erred in denying his declaratory relief claim seeking a declaration there was "no bonafide loan as a matter of law." For the same reasons stated above, Meyerov fails to show the trial court erred with respect to these claims.

> 2. *The Evidence Does Not Compel a Finding that Trident, Clark, and David Aided and Abetted a Breach of Fiduciary Duty*

As to defendants Trident, Clark, and David, Meyerov alleged they aided and abetted Mark's breach of his fiduciary duties because they knew Mark was using OnlyBusiness funds to pay personal expenses. The trial court found Clark believed Mark was using an OnlyBusiness account to pay personal expenses and correctly recording them against his loan account, which did not aid or abet a breach of a duty. Meyerov argues he demonstrated Trident, Clark, and David provided substantial assistance to Mark's breaches. We disagree.

Meyerov largely reargues the evidence in an apparent attempt to have us reweigh it in his favor, which we will not do. (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Moreover, the only evidence Meyerov cites to show Clark and David knew Mark was failing to charge personal expenses against his loan balance is

David's deposition testimony concerning an email he sent. In the email, David wrote, "In short, Mark has put in a few hundred thousand of his own funds and has paid some personal expenses out of those funds through the business. Tom and [Clark] have always been aware of this, and it is all properly recorded in the books." In making every reasonable inference in favor of the judgment, David's statement the expenses were properly recorded would mean he believed Mark's personal expenses were in fact being concurrently deducted from OnlyBusiness's loan balance.

Further, Meyerov contends the trial court failed to discredit Clark's trial testimony that he performed reconciliations of the OB books twice a year and never identified any breaches by Mark. According to Meyerov, Clark's trial testimony "contradicted his initial deposition testimony one to two weeks before trial as to what reconciliations he did." Meyerov again seems to argue Code of Civil Procedure section 2025.620, subdivision (b), required the court to accept Clark's deposition testimony over his trial testimony, but he cites no authority in support of this contention.

Meyerov does not show Trident, Clark, or David aided a breach of a duty by allowing Mark to borrow money for OnlyBusiness. Meyerov, therefore, does not demonstrate he was entitled to a ruling in his favor as a matter of law. (*Shaw, supra,* 170 Cal.App.4th at p. 279.)

3.   *Meyerov Does Not Demonstrate Entitlement to Relief for the Unfair Competition Claim*

As to Meyerov's unfair competition claim under Business and Professions Code section 17200, the trial court found

27

"Meyerov did not identify the particular business practices he claims are unfair." The court concluded he did not prove unfair competition or a right to restitution of money acquired by means of unfair competition, which was the only relief prayed for in the operative complaint for this claim.

Meyerov argues the trial court erred because he identified the unfair business practices in the operative complaint "as the conduct 'as alleged herein' in paragraphs 1-86." Even if Meyerov identified an unfair business practice, Meyerov does not challenge the portion of the court's ruling finding he failed to prove a right to restitution. "In a private action under the unfair competition law, the only monetary remedy available is restitution." (*Ngu v. City Bail Bonds* (2021) 71 Cal.App.5th 644, 651.) And Meyerov does not contend he sought or was entitled to any other remedy. Accordingly, Meyerov did not show entitlement to any relief for this claim.

> 4. *Meyerov Did Not Prove a Violation of Penal Code section 496*

Penal Code section 496, subdivision (a), defines the criminal offense of receiving stolen property. It reads in relevant part, "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," is subject to imprisonment. "Any person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual

damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (Pen. Code, § 496, subd. (c).)

In its statement of decision, the trial court stated, "Meyerov leverages his theory that [Mark] diverted millions of dollars of [OnlyBusiness] business to Mosisoft by claiming a violation of Penal Code section 496." The court determined the business opportunity—custom development services—and vendor hours Meyerov claimed Mark stole were not property under Penal Code section 496 because they were labor, and thus, Meyerov did not prove this cause of action.

Meyerov argues the trial court erred in determining labor is not property under Penal Code section 496. He contends Mark "stole website development vendor hours from [OnlyBusiness]" and "used them in his separate business," making him liable under section 496. Meyerov contends there is a split in authority as to whether labor is considered property under Penal Code section 496 and we should follow *Bell v. Feibush* (2013) 212 Cal.App.4th 1041 (*Bell*), holding labor is property. We disagree with Meyerov's contentions.

In *Bell*, the defendant induced the plaintiff to "loan him $202,500 based on the false pretense he owned [a specific trademark] and he needed the money to settle a lawsuit over his interests" in a related industry. (*Id.* at pp. 1043–1044.) The defendant's representations were lies, and his "so-called" business was a scam. (*Id.* at p. 1044.) The trial court entered default judgment and awarded the plaintiff over $600,000 as treble damages under Penal Code section 496. (*Id.* at pp. 1043–1044.) The defendant was found liable "for the fraudulent acquisition of property (money) from its owner." (*Id.* at p. 1049.) In relevant part, *Bell* addressed whether Penal Code section 496,

29

subdivision (a)'s phrase, "any manner constituting theft," included theft by false pretense. (*Id.* at pp. 1043, 1048–1049.) *Bell* did not address whether labor should be considered property under Penal Code section 496, subdivision (a). (*McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 611 [a case is not authority for a proposition not considered therein or an issue not presented by its own particular facts].)

*Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, 967–970 (*Lacagnina*), on the other hand, held that an employee could not recover treble damages against his former employer under Penal Code section 496 for the alleged theft of his labor. The appellate court stated, "Section 496, which bears the heading 'Receiving stolen property,' makes no reference to labor. . . . [L]abor is not 'property' as that term is used in the Penal Code. '[T]he Penal Code defines property to include "both real and personal property" and further defines personal property to include "money, goods, chattels, things in action, and evidences of debt."'" (*Id.* at p. 969, fn. omitted.)

Thus, there is no split of authority identified by Meyerov. Only *Lacagnina* discusses whether treble damages are available under Penal Code section 496 for the theft of labor, and it holds they are not. While Meyerov tries to distinguish the facts of *Lacagnina*, he does not cite any authority holding vendor hours should be considered property. He does not show the court erred in rejecting his claim under Penal Code section 496.

### C. Challenges to the Judgment in the Direct Action (Case No. B316411)

In the appeal from the action concerning plaintiffs Meyerov's and Polaris Blue's direct claims, plaintiffs contend the

trial court erred in ruling in favor of defendants Mark, Trident, and David as to plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and misrepresentation, negligent misrepresentation, breach of fiduciary duty, and request for an accounting. As with the derivative action, plaintiffs focus almost exclusively on the evidence favorable to them and fail to provide a fair summary of the evidence upon which the court's judgment is based. This is sufficient to find plaintiffs' claims of error forfeited (*Symons Emergency Specialties v. City of Riverside*, *supra*, 99 Cal.App.5th at p. 598; *Foreman*, *supra*, 3 Cal.3d at p. 881). However, even considering the merits, we conclude plaintiffs do not demonstrate error.

       1.    *Plaintiffs Failed to Prove Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing*

At trial, plaintiffs argued Mark breached the parties' memorandum of agreement, effective September 1, 2012, by using Mosisoft to compete with Polaris Blue during the agreement's non-compete period.[9] Paragraph seven of the agreement stated, "[Mark] undertakes that he will not at any time prior to September 1, 2013, directly or indirectly solicit business from, or perform any work for, any customer of [Polaris Blue] as of the Effective Date, where such business or work is similar or the business done with, or work performed for, any

---

[9] To prevail on a cause of action for breach of contract, a plaintiff must prove (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

such customer is similar to that done by [Polaris Blue], and will not at any time prior to September 1, 2013 directly or indirectly compete with [Polaris Blue] in respect of [Polaris Blue's] existing customers." The trial court concluded Meyerov did not prove Mark competed with Polaris Blue before September 1, 2013.

Meyerov argues the trial court's ruling was erroneous because he established Mark violated paragraph seven of the memorandum of agreement. We disagree.

First, plaintiffs contend Mark breached the memorandum of agreement by registering the Mosisoft domain name in November 2012 and obtaining a "dba" in December 2012. However, plaintiffs cite no authority suggesting these actions constitute soliciting business from, performing work for, or competing for Polaris Blue customers.

Second, plaintiffs assert they identified specific companies Mark did work for during the non-compete period that were Polaris Blue customers. The evidence plaintiffs cite, Mark's trial testimony, does not conclusively show he did so. When asked if he did work during the relevant period for the customers Meyerov identified, Mark replied, "No, I don't think so."

Lastly, plaintiffs contend Mark "unfairly interfered with Meyerov's rights to receive the benefits of the [memorandum of agreement], which constitutes a breach of the implied covenant of good faith and fair dealing."[10] This is the extent of plaintiffs'

_____

[10] To prove a violation of the implied covenant of good faith and fair dealing, the plaintiff "'must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that

argument. It fails as they do not support their contention with reasoned argument, legal authority, or specific citations to the record. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 ["'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record'"].)

2. *Plaintiffs Do Not Show the Evidence Compels Ruling in Their Favor for the Breach of Contract Claim Against Trident*

Plaintiffs argued at trial that, in OnlyBusiness's operating agreement, defendants falsely represented that Meyerov's initial contribution was $100, when he actually invested $450,000.[11] The trial court determined Meyerov failed to identify a provision of the operating agreement defendants breached. Additionally, the court noted in its statement of decision that if Meyerov was requesting the court to order correction of the financial statements, plaintiffs did not allege reformation in their complaint or prove the elements of Civil Code section 3399.

---

party of the benefits of the agreement.'" (*VFLA Eventco, LLC v. William Morris Endeavor Entertainment, LLC* (2024) 100 Cal.App.5th 287, 312–313.)

[11] We note Meyerov testified his initial investment in OnlyBusiness was $400,000 followed by another $50,000, but he admitted he had no documents showing he invested the additional $50,000. Clark testified Meyerov never invested the additional $50,000. While plaintiffs assert Mark admitted Meyerov invested $450,000 in OnlyBusiness, when asked how much he invested in OnlyBusiness, Mark testified, "It might have been $400,000 each over the years." Thus, the amount of Meyerov's initial investment was disputed.

Plaintiffs argue the trial court erred, as the evidence showed Trident breached section 3.6 of the agreement. Plaintiffs do not cite any place in the record showing they raised this argument at trial, and thus, it is forfeited. (See *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 [""As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal"""].) The basis for the court's ruling was that plaintiffs failed to identify the provision that was breached at trial, and they fail to show that is incorrect.

Additionally, plaintiffs contend the trial court incorrectly concluded it could not order correction of OnlyBusiness's financial statements because plaintiffs did not allege reformation in their complaint. According to plaintiffs, courts liberally allow amendments to pleadings to conform to proof. However, plaintiffs do not actually assert they requested at any time to amend their pleading according to proof. Further, plaintiffs do not challenge the court's conclusion they did not prove the elements of Civil Code section 3399, such as to warrant an order that the company's financial statements be revised.

3. *Plaintiffs Do Not Demonstrate Error as to their Fraud and Negligent Misrepresentations Claims*

At trial, plaintiffs argued Mark fraudulently induced Meyerov to sign the memorandum of agreement based on the promise Mark would not compete with Polaris Blue. Additionally, plaintiffs argued the OnlyBusiness operating agreement misrepresented Meyerov's capital contribution as $100. The trial court found plaintiffs failed to prove Mark did not intend to perform a promise in the memorandum of agreement at the time it was made. The court also reiterated plaintiffs did not

34

prove Mark competed with Polaris Blue in a manner prohibited by the memorandum of agreement. Further, the court concluded plaintiffs did not prove Meyerov relied to his detriment on the statement in the operating agreement that the members' capital contributions were $100.

Plaintiffs argue Mark's registration of the Mosisoft domain in November 2012 and obtaining a fictitious business name in December 2012 show his fraudulent state of mind at the time the parties entered into the memorandum of agreement in August 2012.[12] However, these actions taken after Mark entered into the agreement with Meyerov do not establish Mark fraudulently induced Meyerov to sign the agreement. Moreover, as discussed above, plaintiffs did not demonstrate Mark breached the memorandum of agreement.[13]

---

[12] "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

[13] Plaintiffs also assert Mark used Polaris Blue's tax identification number to falsely report over $800,000 of OnlyBusiness's revenue as Polaris Blue's revenue. It does not appear plaintiffs raised this theory at trial as part of their fraud or negligent misrepresentation claims against defendants. (See *Hewlett-Packard Co. v. Oracle Corp.*, *supra*, 65 Cal.App.5th at p. 548.) Moreover, plaintiffs do not provide any legal authority or reasoned argument and citations to the record demonstrating Mark is liable for fraud or negligent misrepresentation in connection with the tax identification number. (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.) Their argument that the use of the number constitutes fraud or negligent representation is thus forfeited.

As to the $100 capital contribution designated in the OnlyBusiness operating agreement, plaintiffs contend David and Trident misrepresented the amount of Meyerov's actual contribution. Plaintiffs do not show Trident or David made any false representations in connection with the capital contribution listing. The trial court found Meyerov knew the agreement listed his capital contribution as $100, and he testified he was "happy to go with" the $100 listing when Trident proposed it. Exhibit A attached to the operating agreement lists Trident's, Mark's, and Meyerov's "Initial Capital Contribution" as $100 each. Meyerov signed the operating agreement and initialed every page, including Exhibit A. Evidence at trial showed it was common for companies like OnlyBusiness to designate nominal initial contributions to simply reflect ownership percentages. All this evidence supports the trial court's finding that Meyerov did not rely on the statement in the operating agreement that the members' capital contributions were $100, or that the statement was intended to be fraudulent.

Moreover, as to plaintiffs' contention the trial court should have ordered OnlyBusiness's books to be revised to reflect Meyerov's actual investment amount, plaintiffs fail to cite any authority holding they were entitled to this remedy. (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)

4. *Plaintiffs Do Not Show the Trial Court Erred in Ruling in Defendants' Favor on the Breach of Fiduciary Duty Claim*

Plaintiffs argued Mark breached his fiduciary duty to Meyerov by allowing OnlyBusiness to use Polaris Blue's tax

36

identification number.  The trial court, however, found that plaintiffs did not prove any damages flowing from such use.

On appeal, plaintiffs similarly argue the evidence established defendants improperly used Polaris Blue's tax identification number, but they do not dispute that Meyerov failed to prove he suffered any damages as a result.  (See *Jones v. Goodman*, *supra*, 57 Cal.App.5th at p. 526, fn. 3 [to prove breach of fiduciary duty, a plaintiff must show damages proximately caused by the breach].)  Instead, plaintiffs argue the misuse of Polaris Blue's tax identification number *potentially* exposed Meyerov to liability.  However, plaintiffs do not cite any authority or evidence suggesting this was sufficient to prove damages.  Thus, plaintiffs do not show the court erred in concluding they failed to prove the elements of their breach of fiduciary duty claim.

Plaintiffs additionally requested an injunction at trial, ordering OnlyBusiness not to use Polaris Blue's tax identification number.  In its statement of decision, the trial court stated the operative complaint did not seek injunctive relief, that plaintiffs did not cite a legal basis for their request, that plaintiffs did not prevail on their breach of fiduciary duty claim in the direct action, and that plaintiffs did not prove the fact of an injury to justify a permanent injunction.  Plaintiffs contend the court erred because the prayer for relief in their complaint requested "such other and further relief as the court may deem proper."  They assert the court should have invoked this language to order Mark to stop using Polaris Blue's tax identification number.  Plaintiffs, however, fail to cite any authority or evidence in the record, or provide any reasoned argument, supporting their contention they met the elements for a permanent injunction.  (See *DVD Copy*

37

*Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 721–722 ("'A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate'"].) Indeed, injunctions are extraordinary remedies typically requiring a showing of irreparable harm, and the trial court had no obligation to impose one not specifically requested in this case. (See *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1167 [To obtain a permanent injunction, "a plaintiff ordinarily must show that the defendant's wrongful acts threaten to cause irreparable injury"]; see also *Mallon v. City of Long Beach* (1958) 164 Cal.App.2d 178, 190 ["Injunction 'is an extra-ordinary power, and is to be exercised always with great caution' and the power rarely, if ever, should be exercised in a doubtful case"].)

5. *The Trial Court's Findings Support the Judgment on the Accounting Cause of Action in the Direct Action*

Plaintiffs contend the trial court erred by omitting the accounting cause of action from the statement of decision and failing to rule in plaintiffs' favor. They assert they demanded an accounting to correct inaccurate reporting of income under the Polaris Blue tax identification number. While the statement of decision does not directly address the accounting claim in the direct action,[14] the court's findings support the judgment in favor of defendants.

After the trial court issued its proposed statement of decision, plaintiffs filed more than 100 objections to it. Plaintiffs,

---

[14] Plaintiffs' closing brief and reply brief filed at trial also did not address their accounting claim in the direct action.

38

however, did not object on the ground that the accounting cause of action was omitted from the decision in the direct action. If a party does not bring omissions or ambiguities in the statement of decision to the trial court's attention, "that party [forfeits] the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; see *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912.) In such circumstances, we "will infer the trial court made every implied factual finding necessary to uphold its decision, even on issues not addressed in the statement of decision. The question then becomes whether substantial evidence supports the implied factual findings." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.)

Applying this principle results in an inference the trial court found against plaintiffs on their accounting claim. "An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.'" (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869.) The court entered judgment in favor of defendants as to all of plaintiffs' claims in the direct action and did not find there was any balance due to plaintiffs, including from any alleged misuse of Polaris Blue's tax identification number. In other words, there was no need for an accounting in the direct action.

Furthermore, although the trial court's statement of decision did not directly address plaintiffs' accounting cause of action in the direct action, the court did address Meyerov's

request for an accounting in the derivative action. The court's statement of decision incorporated the "factual findings and conclusions of law" from the derivative action into the rulings in the direct action. In finding an accounting unnecessary in the derivative action, the court noted the parties litigated for nearly four and a half years and that a neutral expert performed an accounting during the litigation. Meyerov further had two experts analyze OnlyBusiness's and Mosisoft's records and testify at trial. The court concluded Meyerov did not prove any further accounting was warranted.[15] Therefore, the conclusion that an accounting was not necessary in the direct action was supported by substantial evidence.

## D. Meyerov Does Not Show the Trial Court Abused its Discretion in Denying His Motion for Costs of Proof (Case No. B320419)

After the judgments were entered, Meyerov filed a motion for costs of proof attorney fees pursuant to Code of Civil Procedure section 2033.420 in the derivative action.[16] Meyerov sought $1,312,600.99 purportedly spent to show Mark improperly

---

[15] The trial court also noted that under the OnlyBusiness operating agreement, Meyerov had the right to inspect and copy OnlyBusiness's books and records.

[16] Code of Civil Procedure section 2033.420, subdivision (a), states, "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."

denied four requests for admissions in the direct action in November 2015.  The trial court denied the motion, which we review for abuse of discretion.  (*Pappas*, *supra*, 75 Cal.App.5th at p. 993.)  We affirm.

The trial court denied the motion for many reasons.  For one, the requests for admissions asked Mark to admit ultimate issues in the direct action (e.g., liability for the breach of fiduciary duty and breach of contract claims) four months after the action was filed and before any significant discovery occurred.  The court cited *Pappas*, *supra*, 75 Cal.App.5th 975, in support of this holding.

In *Pappas*, *supra*, 75 Cal.App.5th 975, the plaintiff served requests for admissions "some three months" after the complaint was filed and before either party was deposed.  (*Id.* at p. 992.)  After prevailing at trial, the plaintiff moved for attorney fees as costs of proof at trial, contending the defendant had "'unreasonably denied two requests for admissions which, if admitted, would have resolved the entire case and resulted in a dismissal.'"  (*Ibid.*)  The trial judge denied the motion, in part, because the requests went to "the ultimate issue in the case."  (*Id.* at p. 993.)

The *Pappas* court noted that in *Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, it addressed a similar issue where it reasoned: "'Frankly, we are troubled that a defendant can at the very inception of litigation, at a time when, as best we can tell, no discovery had taken place, and certainly no deposition, serve [requests for admissions] essentially seeking responses admitting that plaintiff had no case, and then, if plaintiff ultimately proves unsuccessful, recover costs of proof attorney fees, as here.  This, it could be said, is

41

tantamount to a form of strict liability: make a claim; deny an early-served [request for admission] that the claim has no merit; vigorously pursue the claim; lose the claim; and pay.  That cannot be the law.'" (*Pappas*, *supra*, 75 Cal.App.5th at p. 994.)  *Pappas* found this concern was applicable, "where the requests for admissions were served very early in the case and essentially asked [the defendant] to admit she could not prevail at trial, with her denials then used to justify [the plaintiff's] claim to costs of proof fees after prevailing at trial." (*Ibid.*)  The trial court did not abuse its discretion when it "refused to condone such tactics." (*Ibid.*)

Here, Meyerov does not address the trial court's denial under *Pappas*.  "When a trial court states multiple grounds for its ruling and appellant addresses only some of them, we need not address appellant's arguments because 'one good reason is sufficient to sustain the order from which the appeal was taken.'" (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  By failing to address the trial court's reasoning under *Pappas*, Meyerov cannot show the court abused its discretion in denying his motion.  We need not address Meyerov's arguments concerning the other reasons for the court's denial because the court's finding provides us with "'one good reason'" to affirm the order.  (Ibid.)

Nevertheless, we recognize a second reason to affirm the order.  Under section 2033.420, the court may award "*the reasonable expenses incurred*" to prove a matter that was not admitted.  (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 752.)  The party seeking fees has the burden to prove the fees it seeks are reasonable.  (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98.)  Although detailed time records

are not necessarily required, "a fee request ordinarily should be documented in great detail." (*Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587.) "'The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended.'" (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 486–487.) "'[T]he amount of expenses to be awarded, if any'" is "'within the sound discretion of the trial court,'" which is in the best position to assess the value of counsel's performance. (*Bloxham*, at p. 753; *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 427.) We may not disturb the judge's decision unless we are convinced it was clearly wrong. (*Harman*, at p. 427.)

Here, the trial court found Meyerov failed to prove he reasonably incurred $1,312,600.99 in fees, observing he "over-litigated" the matter. The court correctly pointed out the declarations supporting the request did "not identify which tasks were performed and which fees were incurred" in the direct or derivative action.[17] One attorney who initially worked on Meyerov's matters stated he performed general litigation tasks, such as opposing motions and "[p]reparing for and attending a Mandatory Settlement Conference." He concluded he expended "at least 600 hours" in total, but he did not specify how any of that time was related to proving the matters Mark did not admit.

---

[17] Meyerov asserts he presented "aggregated financial information" because the trial court indicated "it did not want to be burdened by itemized cost breakdowns." Meyerov points to a comment the court made when discussing whether the court wanted copies of electronic exhibits shown during trial. Meyerov provides no citation to the record showing the court instructed him not to submit detailed time records in support of a request for attorney fees.

43

Meyerov's trial counsel broadly stated his law firm "incurred hours totaling a value of $1,373,715.70" and "estimated" $961.600.99 of that work was done to prove the issues in the "three" requests for admissions.  However, counsel provided no details about the work performed or time spent on any tasks. The trial court acted within its discretion in deeming the declarations insufficient to show the hours expended were reasonably incurred, especially because the court was familiar with the case and the work of the attorneys who tried the case.  It did not act unreasonably in denying Meyerov's motion on the basis that he failed to provide sufficient evidence to support his request for $1,312,600.99 in fees.

## DISPOSITION

The judgments following the bench verdict and the order denying Meyerov's motion for attorney fees under Code of Civil Procedure section 2033.420 are affirmed.  Meyerov and Polaris Blue are to bear their own costs on appeal.


MORI, J.

We concur:



CURREY, P. J.



COLLINS, J.